*E V I D E N T I A R Y    H E A R I N G    R E Q U E S T E D*

AO 241
(Rev. 12/04)

Page 2

— 08 - 006 —

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District: Delaware | |
|---|---|---|
| Name (under which you were convicted): <br> ARTEL HOPKINS | | Docket or Case No.: |

| Place of Confinement: Sussex Correctional Institution <br> P.O. Box 500 <br> Georgetown, DE   19947 | Prisoner No.: #00254263 |
|---|---|

| Petitioner (include the name under which you were convicted) <br> United States of America ex. rel. <br> Artel Hopkins (Inmate#00254263 ) | v. | Respondent (authorized person having custody of petitioner) <br> Mike Deloy, Warden at the <br> Sussex Correctional Institution |
|---|---|---|

| The Attorney General of the State of   Delaware, Beau Biden |
|---|

*EVIDENTIARY HEARING REQUESTED*       **PETITION**     *EVIDENTIARY HEARING REQUESTED*

1.  (a) Name and location of court that entered the judgment of conviction you are challenging:

      Superior Court of Sussex County
      Georgetown, DE   19973

    (b) Criminal docket or case number (if you know):  Def. ID#0402002032

2.  (a) Date of the judgment of conviction (if you know):  09/20/2004

    (b) Date of sentencing:  11/12/2004

3.  Length of sentence:  18 years incarceration to be follow by various levels of probation.

4.  In this case, were you convicted on more than one count or of more than one crime?     ☒ Yes     ☐ No

5.  Identify all crimes of which you were convicted and sentenced in this case:  Trafficking in Cocaine, Possession With Intent to Deliver, Maintaining a Building, Conspiracy Second Degree, Possession of Drug Paraphernalia

6.  (a) What was your plea? (Check one)

      ☒ (1)   Not guilty          ☐ (3)   Nolo contendere (no contest)

      ☐ (2)   Guilty              ☐ (4)   Insanity plea

FILED

JAN 03 2008

PO scanned
Receipt # 15014

AO 241
(Rev. 12/04)

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?

(c) If you went to trial, what kind of trial did you have? (Check one)

    X☒☒ Jury   ☐ Judge only

7.    Did you testify at a pretrial hearing, trial, or a post-trial hearing?

    ☐ Yes X☒☒ No

8.    Did you appeal from the judgment of conviction?

    ☒☒☒ Yes  ☐ No

9.    If you did appeal, answer the following:

(a) Name of court:  Delaware Supreme Court

(b) Docket or case number (if you know):   540, 2004

(c) Result: Convictions Affirmed

(d) Date of result (if you know):  03/22/2006

(e) Citation to the case (if you know):

(f) Grounds raised:   State violation of discovery obligations and Insufficient evidence.

(g) Did you seek further review by a higher state court?  ☐ Yes  ☒☒☒ No

    If yes, answer the following:

(1) Name of court:

(2) Docket or case number (if you know):

(3) Result:

(4) Date of result (if you know):

AO 241
(Rev. 12/04)

Page 4

(5) Citation to the case (if you know):

(6) Grounds raised:

(h) Did you file a petition for certiorari in the United States Supreme Court?  ☐ Yes  ☒ No

If yes, answer the following:

(1) Docket or case number (if you know):

(2) Result:

(3) Date of result (if you know):

(4) Citation to the case (if you know):

10. Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?  ☒ Yes  ☐ No

11. If your answer to Question 10 was "Yes," give the following information:

(a)  (1) Name of court:  Superior Court, Sussex County

(2) Docket or case number (if you know):  Def.#0402002032

(3) Date of filing (if you know):  01/29/2007

(4) Nature of the proceeding:  Motion For PostConviction Relief.

(5) Grounds raised:  Trial Court Violate The Separation of Powers and
Became involved In Defendant's Prosecution By Supplying
the Delaware State Police with Drugs For an Under-
Cover Drug Investigation.

II. Did The Prosecutor's Negative and Univited Comment of Defendant's
Solence impinging on Defendant's Fifth Amendment right.

III. Ineffective Assistance of Counsel during Trial.

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes  ☒ No

(7) Result:

(8) Date of result (if you know):

AO 241
(Rev. 12/04)

(b) If you filed any second petition, application, or motion, give the same information:    N/A

    (1) Name of court:

    (2) Docket or case number (if you know):

    (3) Date of filing (if you know):

    (4) Nature of the proceeding:

    (5) Grounds raised:

    (6) Did you receive a hearing where evidence was given on your petition, application, or motion?

    ☐  Yes    ☐  No       N/A

    (7) Result:

    (8) Date of result (if you know):

(c) If you filed any third petition, application, or motion, give the same information:

    (1) Name of court:

    (2) Docket or case number (if you know):

    (3) Date of filing (if you know):

    (4) Nature of the proceeding:

    (5) Grounds raised:

AO 241
(Rev. 12/04)

Page 6

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐  Yes    ☐  No          N/A

(7) Result:

(8) Date of result (if you know):

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?          N/A

(1) First petition:    ☐  Yes    ☐  No

(2) Second petition:   ☐  Yes    ☐  No

(3) Third petition:    ☐  Yes    ☐  No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:    N/A

12.    For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

GROUND ONE:    "OUTRAGEOUS GOVERNMENT CONDUCT" VIOLATION

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

*SEE ATTACHMENT*

(b) If you did not exhaust your state remedies on Ground One, explain why:

EXHAUSTIVE

(c)    **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☐  Yes    ☒  No

(2) If you did not raise this issue in your direct appeal, explain why:  Ineffective assistance of counsel since defense counsel did not make any objection to this evidence being submitted at trial and did not move to dismiss prior to trial based upon this government misconduct.

**(d) Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☒  Yes    ☐  No

(2) If your answer to Question (d)(1) is "Yes," state:

**Type of motion or petition:**  Post-Conviction Relief pursuant Super. Ct. Crim. Rule 61

**Name and location of the court where the motion or petition was filed:**  Superior Court for the State of Delaware, and for Sussex County, Georgetown, Delaware

**Docket or case number (if you know):**  Artel Hopkins, Def. ID#0402002032

**Date of the court's decision:**  April 27, 2007

**Result (attach a copy of the court's opinion or order, if available):**  EXHIBIT C

(3) Did you receive a hearing on your motion or petition?    ☐  Yes    ☒  No

(4) Did you appeal from the denial of your motion or petition?    ☒  Yes    ☐  No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?  ☒ Yes    ☐  No

(6) If your answer to Question (d)(4) is "Yes," state:

**Name and location of the court where the appeal was filed:**  Delaware Supreme Court
55 The Green
Dover, DE  19901

**Docket or case number (if you know):**  No. 250, 2007

**Date of the court's decision:**  November 15, 2007

**Result (attach a copy of the court's opinion or order, if available):**
ATTACHED

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

AO 241
(Rev. 12/04)

(e) Other Remedies: Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One:

NONE

**GROUND TWO:**       "PROSECUTOR'S COMMENT ON RIGHT TO TESTIFY"

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

*SEE ATTACHMENT*

(b) If you did not exhaust your state remedies on Ground Two, explain why:

EXHAUSTIVE

(c)    **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?       ☐ Yes   X☒  No

(2) If you did **not** raise this issue in your direct appeal, explain why:   Ineffective assistance of counsel since defense counsel did not make any objection at trial and did attempt to raise issus on direct appeal.

(d)    **Post-Conviction Proceedings;**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

X☒  Yes    ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: Post-Conviction Relief pursuant Super. Ct. Crim. Rule 61

Name and location of the court where the motion or petition was filed: Superior Court for the State of Delaware, and for Sussex County, Georgetown, Delaware.

Docket or case number (if you know):   Artel Hopkins, Def. ID#0402002032

Date of the court's decision:  April 27, 2007

AO 241
(Rev. 12/04)

Result (attach a copy of the court's opinion or order, if available):

EXHIBIT C

(3) Did you receive a hearing on your motion or petition?  ☐ Yes  ☒ No

(4) Did you appeal from the denial of your motion or petition?  ☒ Yes  ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?  ☒ Yes  ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Delaware Supreme Court
55 The Green
Dover, DE  19901

Docket or case number (if you know):

No. 250, 2007

Date of the court's decision:  November 15, 2007

Result (attach a copy of the court's opinion or order, if available):

ATTACHED

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you :
have used to exhaust your state remedies on Ground Two

NONE

**GROUND THREE:**     "RECIPROCAL DISCOVERY DENIED"

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

*SEE ATTACHMENT*

AO 241
(Rev. 12/04)

(b) If you did not exhaust your state remedies on Ground Three, explain why?

(c)     **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?     X X X X Yes     ☐ No

(2) If you did not raise this issue in your direct appeal, explain why:

(d)     **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐     Yes    X X X No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?     ☐ Yes     ☐ No

(4) Did you appeal from the denial of your motion or petition?     ☐ Yes     ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?     ☐ Yes     ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you
have used to exhaust your state remedies on Ground Three:

**GROUND FOUR:**            N / A

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

(b) If you did not exhaust your state remedies on Ground Four, explain why:

(c)    **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?        ☐  Yes      ☐  No

(2) If you did not raise this issue in your direct appeal, explain why:

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐   Yes     ☐   No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

AO 241
(Rev. 12/04)

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?  ☐ Yes  ☐ No

(4) Did you appeal from the denial of your motion or petition?  ☐ Yes  ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?  ☐ Yes  ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you
       have used to exhaust your state remedies on Ground Four:

&AO 241
(Rev. 12/04)

13.    Please answer these additional questions about the petition you are filing:

    (a)    Have all grounds for relief that you have raised in this petition been presented to the highest state court

        having jurisdiction?    ☐  Yes    ☐  No

        If your answer is "No," state which grounds have not been so presented and give your reason(s) for not

        presenting them:

    (b)    Is there any ground in this petition that has not been presented in some state or federal court?  If so,

        ground or grounds have not been presented, and state your reasons for not presenting them:

14.    Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction

    that you challenge in this petition?    ☐  Yes    ☐  No

    If "Yes," state the name and  location of the court, the docket or case number, the type of proceeding, the issues

    raised, the date of the court's decision, and the result for each petition, application, or motion filed.  Attach a copy

    of any court opinion or order, if available.

15.    Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for

    the judgment you are challenging?    ☐  Yes    ☐  No

    If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the

    raised.

AO 241
(Rev. 12/04)

16.    Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing:     John M. Sandy, Esq
Georgetown, Delaware

(b) At arraignment and plea:    John M. Sandy, Esq.
Georgetown, Delaware

(c) At trial:    John S. Malik, Esq.
100 East 14th Street
Wilmington, Delaware

(d) At sentencing:
John S. Malik, Esq.
100 East 14th Street
(e) On appeal:    Wilmington, Delaware
John S. Malik, Esq.
100 East 14th Street
(f) In any post-conviction proceeding:Wilmington, Delaware
Edward C. Gill, Esq.
Georgetown, Delaware

(g) On appeal from any ruling against you in a post-conviction proceeding:
Edward C. Gill, Esq.
Georgetown, Delaware

17.    Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?    ☐ Yes    ☒ No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?    ☐ Yes    ☐ No

18.    TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

1.    On September 20, 2004, Petitioner was found guilty by the jury. I appealed.
2.    By opinion dated March 2, 2006, Delaware Supreme Court affirmed the Superior Court decision. MANDATE ISSUE on March 22, 2006.

✎AO 241
(Rev. 12/04)

3.  On January 29, 2007, Petitioner filed a Petition for Post Conviction relief in the Superior Court.

4.  On April 27, 2007, Superior Court summarily dismissed Petitioner's petition.

5.  On September 27, 2007, I appealed to the Delaware Supreme Court.

6.  On November 15, 2007, Delaware Supreme Court affirmed the Superior' decision.

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C.   § 2244(d) provides in part that:

    (1)     A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody  pursuant to the judgment of a State court.  The limitation period shall run from the latest of -

        (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

        (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

        (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

        (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

AO 241
(Rev. 12/04)

(2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief: Because Artel Hopkins has shown that various constitutional rights of his has been violated, he is entitled to a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

or any other relief to which petitioner may be entitled.
## CONCLUSION
    For the foregoing alternative reasons, Petitioner Artel Hopkins ask for this Court to grant his Writ of Habeas Corpus, or alternatively ordered an evidentiary hearing.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for

Writ of Habeas Corpus was placed in the prison mailing system on   December 30, 2007 (month, date, year).

Executed (signed) on   December 30, 2007   (date).

_____
Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

IN FORMA PAUPERIS DECLARATION

_____
[insert appropriate court]

* * * * *

ATTACHMENT "A"

In re ARTEL HOPKINS on habeas corpus

GROUNDS FOR RELIEF
(Question #12, Form AO-241)

### Ground One

### "OUTRAGEAOUS GOVERNMENT CONDUCT" VIOLATION

Superior Court became overly involved in Petitioner's prosecution by supplying the Delaware State Police with drugs for an undercover drug investigation, in violation of the Separation of Powers.  This violated Petitioner's due process of law, as guaranteed by Amendments 5th and 14th to the U.S. Constitution.  Specifically, the prosecution was allowed to informed the jury of the Court's assistance in the investigation and prosecution of the crimes which Petitioner faced.  See U.S. v. Russell, 411 U.S. 423 (1973).

### a. Supporting Facts:

1.  Artel Hopkins was indicted for various of drug charges.  He was represented  during all critical proceedings by attorney John S. Malik [hereinafter "defense counsel"].

2.  The case at bar involves a court-assisted, Delaware State Police "reverse" drug sting operation conducted by utilizing a repeat drug offender turned informant who had recently been arrested for trafficking two kilograms of cocaine and possessing a firearm. (A13; TA169)

### b. Pedro Marte's Cooperation-Immunity Agreement

3.  In September of 200, Pedro Marte pleaded guilty to Trafficking in Cocaine and was incarcerated for a three year mandatory minimum term of imprisoment. (A18, 32-33; TC26; 68-69)  On December 11, 2003, after serving thirty-nine months, Marte arranged for the delivery of two kilograms of cocaine in Delaware.  (A19-20, 36; TC28-29, 84)  On January 30, 2004, Detective Dan Wright of the Delaware State Police arrested Marte for possession of two kilograms of cocaine and a handgun.  (A9-10, 20-21; TA164-165; TC29-30)

4.  After his arrest, Detective Wright asked Marte if he wish to "help himself" by cooperating with the Delaware State Police.  (A10, 22-23; TA165; TC31-32)  Marte agreed to assist the police in their cocaine trafficking investigations, in an effort to obtain a favorable plea offer and sentencing

recommended since he faced a mandatory minimum sentence of eighteen years incarceration for his new drug charges. (All; TA164-166) The nature of the sting operation was for the informant, Marte, to arrange for sale of cocaine to a target at a specific time and place. When the target arrived with the money to pay for the cocaine, the Delaware State Police would affect an arrest of the target. The Delaware State Police referred to this type of sting operation as a "reversal" or reverse buy. (A13; TA169)

### c. Informant Marte Target Raymond Bacon.

5. On February 2, 2004, Marte targeted Raymond Bacon, a friend he had met while serving his first drug sentence at the Sussex Correctional Institute. (A11-12, 22-25; TA166-167; TC32-33) Marte and Bacon negotiated all of the details for the sale of two kilograms of cocaine $47,000.00. (A26-31; TC50-55)

### d. Superior Court Supplies Cocaine for "Reverse Sting" Operation.

6. On February 3, 2004, the Superior Court of the State of Delaware in and for Sussex County became a part of the Delaware State Police's undercover investigation and prosecution team by supplying the police with the additional kilograms of drugs needed to set up this transaction. With the Honorable E. Scott Bradley presiding, the Superior Court granted to the State of Delaware an ex parte motion in the case of State of Delaware v. Julian Bodnari, Del. Supr. ID No. 9909027880. In that Order, the Superior Court released drugs from Mr. Bodnari's case, which constituted over 1000 grams of cocaine, to the Delaware State Police to utilize in their reverse sting operation. (EXHIBIT A)

### e. Arrest Of Petitioner Artel Hopkins.

7. Ultimately, Bacon came to a hotel in Seaford, Delaware accompanied with Hopkins. (A15-16; TB89-90) The Delaware State Police arrested Bacon

and Hopkins inside the hotel room after the two had brought $47,000.00 in cash into the hotel room and an undercover detective delivered the two kilograms of cocaine to the hotel room. (A37; TC116)

### f. Evidence About The Trial Court's Involvement In The Investigative Stage Of Hopkins' Proceedings.

8. At Petitioner's trial, Marte and Bacon both testified as State's witnessess. (A14, 17; TB48; TC25) Moreover, the trial court's assistance in the undercover drug investigation was specifically brought to the attention of the jury in this case and no objection to this evidence was made by defense counsel. (A39-44; TD51, 81-85); see also Exhibit D.

9. Based on the foregoing, Petitioner respectfully asserts that the Court's involvement in his case "gave at least the appearance if not the actuality of a judiciary which was NOT independent and impartial . . . " (Exhibit B) The trial court actually became involved in the investigation and setting up of the Delaware State Police's reverse buy operation when it, granted the Order releasing evidence from Mr. Bodnari's case to the Delaware State Police to utilize in the undercover drug investigation in which Hopkins was arrested. (Exhibit D) The Court's conduct "constituted a breach of the requirement of the separations of powers under the United States Constitution between judicial and executive branches of government" A Judge cannot function as a prosecutor or as a police officer. In other words, the judiciary has no power to investigate or prosecute offenses.

10. In the case at hand, the Court became involved in the investigative stage of the proceedings when it supplied the Delaware State Police the drugs utilized in its undercover drug investigation. Through this action the Court became part of the prosecution team, and as a prosecutor in a black robe. Moreover, it is Petitioner's contention that the jury certainly should not view the judge in this light. By letting the jury know that the drugs used in the investigation were authorized by the Court, the trial court simply

put its rubber stamp of approval on the prosecution's case against Hopkins. Accordingly, the Court's conduct amounts to a violation of Hopkins' due process rights under the 5th and 14th Amendments, and in violation of what is commonly known as "Outrageous Government Conduct".

11. Petitioner's defense counsel did not move to dismiss the indictment on grounds that the Court's overinvolvement in the investigation and setting up the transaction which was entirely created by governmental authorities, constitutes a breach of the requirement of the Separation of Power Doctrine contained in both the Delaware and United States Constitutions between judicial and executive branches of government, or in alternatively that the conduct of the governmental authorities are so outrageous that it violates fundamental fairness, shocking to the universal sense of justice mandated by the due process clause. Defense counsel also failed to make any objection to this evidence being submitted at trial, (A39-44; TD51, 81-85); which was ineffective, and defense counsel showed further ineffectiveness by failing to raise the "Outrageous Government Conduct" issue on direct appeal.

12. On January 29, 2007, Petitioner file a timely Petition for Post-Conviction Relief. (EXHIBIT B). Ground one of the petition alleged that, Hopkins' case involved a drug transaction which was entirely created by governmental authorites, the Court's overinvolvement in the investigation and setting up the transaction by supplying the drugs, and the Court allowing the prosecution to informed the jury of the Court's role in Hopkins' case. Hopkins' stated in his petition for post conviction relief that the Court's action "constitutrd a breach of requirement of separation of powers contained in both the Delaware and United States Constitutions between judicial and excutive branches of government." (EXHIBIT B). Petitioner clearly brought to the attention of the Superior Court a colorable claim that there was a miscarriage of justice because of a constitutional violation, and thus, no

procedural bar to relief existed.    However, the trial court disregarded these contentions in denying the claim without an evidentiary hearing.

13.  On November 15, 2007, the Delaware Supreme Court affirmed the Superior Court's dismissal of the Petitioner's Petition for Post-Conviction Relief.  the Delaware Supreme Court disagreed with the Superior Court determination that Ground One of the Hopkins petition was procedural bar for review under Rule 61()(3).  Rather, the Delaware Supreme Court held that "There is no evidence in this case that one branch of government attempted to exercise the powers properly belonging to another." (ATTACHED).  However, the Delaware Supreme Court's decision to make a factual finding without first ordering a hearing (precisely what normally happens in Superior Court),  was contrary to, and resulted from an unreasonable application of, clearly established U.S. Supreme Court law. Specially, the Delaware Supreme Court failed to remand for a hearing — "where the Petitioner establishes a colorable claim for relief and was not accorded a state hearing on his claim.

### g. Supporting Cases:

A.  U.S. V. Russell, 411 U.S. 423, 432 (1973).

An accused is denied the basic protections of due process clause if government conduct is so outrageous that it violates "fundamental fairness" or is "shocking to the universal sense of Justice."

B.  Keeney v. Tamayo-Reyes, 504 U.S. 1, 5, (1992).

In stating a "colorable" claim, a petitioner is merely required to allege specific facts  which, if true, would entitle him for relief.

### Ground Two

### PROSECUTOR'S COMMENT ON RIGHT TO TESTIFY.

Petitioner's 5th Amendment right not to be compelled to be a witness against himself was violated when the prosecutor inmproperly commented on Petitioner's invocation of his right to testify or not to testify. Griffin v. California,   380 U.S. 609 (1965).

### a. Supporting Facts:

ATTACHMENT A: HABEAS GROUNDS

13. Petitioner realleges and incorporates by reference paragraphs 1 through 12 as though fully set forth herein.

14. In summing up to the jury, the prosecutor stated, "I don't know if you would agree or not that you may have more faith in a process when poker is played with the cards up and they are all on the table than when some of them are kept concealed underneath the table and only a few are placed up for you to view." (A38: TE120) (EXHIBIT B).

15. Base on the foregoing, the improper comments by the prosecutor impermissibly referred to Hopkins' election not to testify in his defense. Accordingly, the prosecutor's argument "constituted an indirect comment upon the Petitition's silence . . . and implied to the jury that the defense was simply hiding behind the right to remain silent and not present any evidence." (EXHIBIT B). Nevertheless, the prosecutor's comment when couple with the observation that the Petitioner did not testify, could have led a juror to conclude that he was guilty of the charges he faced. Petitioner had a right to choose not to testify, and not to have the either the judge or the prosecutor make any adverse comments on his right. The prosecutor's negative and uninvited comments on Hopkins' silence was in violation of his right under the 5th Amendment, and in violation of what is commonly known as an unqualified right. Harris v. New York, 401 U.S. 222, 225 (1971).

16. Petitioner's trial counsel did not object to the prosecutorial comments on Hopkins' silence, trial counsel was ineffective in failing to do so, and appellate counsel was ineffective in failing to raise the 5th and 14th Amendments rights under the "Due Process Clause" issue on direct appeal.

17. The prosecutor's comments in this case "had substantial and injurious effect or influence in determining the jury's verdict. Petitioner respectfully submits that any comment that refers to one side laying out all

its cards on the table could only suggest to the jury that the other side has not. The prosecutor clearly meant that an inference of Hopkins' guilt should be drawn through his failure to lay his cards out on the table or testify.

18.    Furthermore, Petitioner respectfully submits that the 5th Amendment right against self-incrimination assures any defendant that his or her silence will not be used against them, but through his statement, the prosecutor is saying that Hopkins is in the best position to tell his story, but he will not do so.  This statement was obviously manifestly intended  to reflect on Petitioner's silence and a jury would naturally and necessarily take the statement as a comment on his election to remain silent.

19.    Finally, Petitioner's right to a fair trial and due process have been infringed in a fundamental manner. Even if indirect, the prosecutor's comment was nonetheless problematic because "[a] prosecuting attorney represents all the people, including the Petitioner who [was] being tried. It is his duty to see that the State's case is presented with earnestness and vigor, but it is equally his duty to see that justice be done by giving defendant a fair and impartial trial.

20.    Petitioner did not testify at the trial. Although this is a "tactical" decision by trial counsel that is not subject to collateral **review**, the fact remains that Petitioner never got to tell the jury what happened.

b. Supporting Cases:

A.    Griffin v. California, 380 U.S. 609 (1965).

Prosecutor's comment that defendant "has not seen fit to take the stand and deny or explained" violated 5th Amendment.

B.    Harris v. New York, 401 U.S. 222, 225 (1971).

Every criminal defendant is privileged to refuse to testify.

C. <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993).

Habeas corpus relief for trial errors involving prosecutorial misconduct should be granted only if the error "had substantial and injurious effect or influence in determining the jury's verdict."

D. <u>Lesko v. Lehman</u>, 925 F.2d 1527, 1544 (3d Cir. 1991).

Prosecutor's request that jury consider defendant's "arrogance" in failing to apologize for homicide while presenting mitigating evidence during penalty phase of murder prosecution was improper because comment condemned defendant's failure to testify during guilt phase.

E. <u>Donneley v. Dechristoforo</u>, 461 U.S. 637, 649 (1974).

Closing argument is "an aspect of a fair trial which is implicit in the Due Process Clause of the Fourteenth Amendment by which the States are bound."

F. <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986).

"[T]he right to effective assistance of counsel . . . may in a particular case be violated by even an isolated error of counsel if that error is sufficiently egregious and prejudicial."

### Ground Three

### "RECIPROCAL DISCOVERY" DENIED.

State Court's admission into evidence expert testimony interpreting the drug lingo "beat for six" denied Petitioner a right to a fair trial, since the State failed to disclose the substance of this testimony under reciprocal discovery after a proper defense request had been made.  This violated Petitioner's right to due process of law and a fair trial as guaranteed by Amendments 5th and 14th to the U.S. Constitution.  See <u>Wardius v. Oregon</u>, 412 U.S. 470 (1973).

### a.  Supporting Facts:

21.  The Petitioner was originally represented by John M. Sandy,

Esquire. (A1, 674; TD140). After he entered his appearance, Mr. Sandy filed a request for discovery pursuant to Superior Court Criminal Rule 16 on March 3, 2004. (A1,18-21,674-695; TD140, 161-162). Mr. Sandy's initial Rule 16 discovery letter included a request for expert opinions. (A20, 695; TD 161). On May 14, 2004, the State responded by sending Mr. Sandy a discovery response. (A22-24,674,692,694; TD140,158,160). Mr. Sandy thereafter filed a Motion to Compel Discovery on June 2, 2004 that was noticed to be heard on June 4, 2005. (A2,693-694; TD159-161). Mr. Sandy's Motion to Compel was withdrawn on June 4, 2004 after the State sent him copies of the search warrant, relevant police reports, and the video tape of room 307 of the Best Western Hotel in Seaford, Delaware with a cover letter dated June 3, 2004. (A2,693; TD159).

22. On June 25, 2004, a Stipulation of Substitution of Counsel was filed whereby Petitioner Hopkins' new counsel, John S. Malik substituted his appearance for that of Mr. Sandy. (A2,694;TD160). On or about June 22, 2004, Petitioner's new counsel filed a Rule 16 discovery request. (A2, 25-29, 694-695; TD160-162). Counsel' discovery letter expressly requested that the State disclose any evidence that it sought to produce at trial under D.R.E. 702, 703, and 705 including the names of any experts it anticipated calling as witnesses at trial as well as summary of substance of their testimony as required by Superior Court Criminal Rule 16(a)(1)(E). (A25,664,673; TD130,139).

23. The State responded by sending counsel a copy of its May 14, 2004 discovery response that originally had been sent to Mr. Sandy with Sandy's name crossed out and counsel's name appearing in its place. (A30-32,694; TD160). As far as expert witnesses and the substance of their testimony was concerned, the State indicated that it intended to call an employee of the State Medical Examiner's Office who would testify as an expert about the laboratory analysis of the cocaine and Detective Dan Wright of the Delaware

ATTACHMENT A: HABEAS GROUNDS

State Police Special Investigations Unit who would testify as an expert that the controlled substances in question were possed with intent to deliver rather than for personal use. (A31,670-671;TD136-137). The State's discovery response further noted that Detective Wright's opinion would be based upon his training and experience as well as the attendant circumstances with respect to the instant case. (A31,670-671; TD136-137). Nowhere in its discovery response did the State indicate that Detective Wright also would be offereing expert testimony regarding drug lingo that was used in the drug trade or the specific phase "beat for six". (A31).

24. As its final witness, the State recalled Detective Wright. (A642; TD107). During this portion of his testimony, the State established his training and nine and a half years experience as a detective who specialized in investigating drug offenses in the Delaware State Police Special Investigations Unit. (A643-645; TD108-110). After hearing Detective Wright's testimony concerning his training and experience, the defense indicated that there was no objection to his testifying as an expert regarding the issue of whether the cocaine in question was possessed with the intent to dliver, i.e., for commercial use, or whether it was possessed for personal use. (A645: TD110).

25. The Detective then opined that the two kilograms of cocaine in the case at bar were possessed with the intent to deliver based upon the follow: (1) the substantial cost of the the two kilograms of cocaine, namely $47,000.00, (A647;TD112); (2) the fact that there was only drug paraphernalia for cooking powder cocaine into crack cocaine in the hotel room, (A648-649; TD113-114); (3) the fact that one kilogram of cocaine purchased for $23,500.00 could be sold on the "street" for $100.00 per gram that would generate a gross sum of $100,000.00 from "street" sales, (A652;TD117); and (4) the fact that there

ATTACHMENT A: HABEAS GROUNDS

was a box of sandwich bags found in the hotel room that are commonly used to package smaller amounts of cocaine for re-sale, (A660-661; TD125-126). In making his expert conclusion that the subject cocaine was possessed with the intent to deliver rather than for personal use, Detective Wright did not suggest that Petitioner's alleged statement on video tape[1] of the hotel room that he had been "beat for six"[2] played a role in his developing his opinion in this regard.  (A645-653; TD110-118).

26.  After the established the basis of Detective Wright's expert opinion that the two kilograms of cocaine were possessed with intent to deliver, the prosecutor moved to new areas of unquiry and questioned the detective about the following:  the loss of the picture on the black and white video of the inside of the hotel room,  (A656-657; TD121-122);  presence of rubber bands inside the hotel room,  (A658-659; TD123-124); and alleged problems that Raymond Bacon and Pedro Marte experienced with their cells phones, (A661; TD126).  The State next questioned Detective Wright regarding Petitioner's statement that he had been "beat for six" that appeared on the video tape of room 307 of the Best Western Hotel.  (A661;TD127).

27.  Based on the foregoing, the State's failure to disclose its intention to offer expert testimony regarding drug lingo in advance of trial, prejudiced

---

1

During Marte's trial testimony, the State played a video tape that depicted the events that occurred inside Room 307 of the Best Western Hotel video surveillance that was being conducted and Marte, Bacon, and Petitioner were inside the room.  (A458;TC98).

2

On the video tape of the hotel room, Petitioner appears to speak the words "beat for six" when he entered the hotel room and allegedly prepared to test the cocaine to insured that it was real and of good quanlity.  (A699; TE3).  NOTE: Defense counsel also did not review the video tape of the actual transaction until the final case review, which occurred shorty prior to trial.  This also prevented defense counsel from being prepared to deal with the State's presentation of that testimony.  Ineffectiveness of counsel claim was deny of post-conviction relief Rule 61.

Petitioner Hopkins by "catching the defense off guard" with evidence it was not prepared to address, by precluding the defense from seeking an expert witness to counter the testimony of the State's expert, and by preventing Petitioner from being able to assess the full range of discoverable evidence that the State possessed when deciding whether to proceed to trial or to accept a plea bargain. (A671-672,676-677; TD137-138,142-143). Accordingly, the sanction sought by the defense for the State's discovery violation was the exclusion of the proposed drug lingo testimony of Detective Wright regarding the phase "beat for six" , in violation of Petitioner's right to a fair trial ,under the 5th and 14th Amendments, and in violation of what is commonly known as a defendants right under "Wardius" and its progeny.

28. Petitioner's trial counsel objected on 5th and 14th Amendment grounds to the use of Detective Wright's expert testimony regarding drug lingo severely prejudice Hopkins by "catching the defense off guard" with evidence it was not prepared to address. (Alternatively, to the extent that counsel did not object properly to the offered expert testimony regarding lingo on state and federal grounds, trial counsel was ineffective in failing to do so, and ineffective for failing to review the video tape where the drug lingo phase was included to deal effectively with the State' presentation of that testimony.)

29. The trial court overruled the objection to the detective's drug lingo testimony and allowed it into evidence. However, the trial court's decision to admit the expert testimony was contrary to, and resulted from an unreasonable application of, clearly established U.S. Supreme Court law. Specifically, the trial court ruled that when exclusion of evidence is sought as a sanction, society's needs are balanced against the defendant's right

to a fair trial and the public is entitled to have cases determined on the merits. (A702; TE6). However, However, U.S. Supreme Court cases clearly establish that general improprieties occurring in state proceedings are cognizable only if they resulted in fundamental unfairness and consequently violated the Petitioner's Fourteenth Amendment right to due process.

30. Petitioner Hopkins' right to a fair trial obviously was trumped by the "needs of society" since the requested remedy of exclusion of the drug lingo evidence was denied and Detective Wright's testimony interpreting the phase "beat for six" was admitted as evidence at trial. (A702-703;TE6-7).

31. The evidentiary rulings by the trial court caused Petitioner unfair prejudice. It was the defense theory that Petitioner Hopkins was unwittingly present in the hotel room when the police raided it since the two kilogram cocaine transaction had been negotiated and orchestrated entirely by Marte and Bacon. (A57-60,774-775;TA157-160;TE78-79). Detective Wright's interpretation of the drug lingo "beat for six" was an incriminating expert testimony. It was unfairly presented since the State failed to disclose the substance of this expert testimony to Hopkins prior to trial so that it could be weighed and assessed and so that a way to counter it could be considered. Thus, given the theory of the defense case, the evidentiary ruling by the trial court discussed above "had substantial and injurious effect or influence in determining the jury's verdict."

### b. Supporting Cases:

A. Wardius v. Oregon, 412 U.S. 470 (1973).

Oregon notice-of-alibi rule, which did not allow defendant reciprocal discovery of government's alibi rebuttal witness, violated due process.

B. Brecht v. Abrahamson, 507 U.S. 619, 623, 629-30 (1993).

Under this standard, habeas relief is automatically granted for "structural defects," while habeas relief for constitutionally significant trial errors

is granted only when the error "had substantial and injurious effect or influence in determining the jury's verdict."

C. U.S. v. Tejada, 886 F.2d 483, 485-86 (1st Cir. 1989).

Government fulfill its disclosure duty by informing defendants that expert would testify as to contents of ledger that had been given to defendants to examine.

D. U.S. v. Ortega, 150 F.3d 937, 943 (8th Cir. 1998).

Disclosure require because agent's testimony involving specialized knowledge of drug-related activities and paraphernalia was expert opinion.

E. U.S. v. Figueroa-Lopez, 125 F.3d 1241, 1242-47 (9th Cir. 1997).

Disclosure required because agent's testimony, applying drug-traffiking profile to defendant, was expert opinion because interpreting profile required specialized knowledge.

ATTACHMENT A: HABEAS GROUNDS

## PROOF OF SERVICE BY MAIL

### BY PERSON IN STATE CUSTODY
(Fed. R. Civ. P. 5;28 U.S.C. § 1746)

I, __Artel  Hopkins__, declare: I am 18 years of age and a party to this action. I am a resident of Sussex Correctional Institution, in the county of Sussex, State of Delaware. My prison address is: SCI, P.O. Box 500, Georgetown, DE  19947.

On __December__, __30__, 2007, I served the attached: Writ of **Habeas Corpus** on the parties herein by placing true correct copies thereof, enclosed in a sealed envelope, with postage thereon fully paid, in the United States Mail in a deposit box so provided at the above-named correctional institution in which I am presently confined. The envelope was addressed as follows:


Beau Biden
Attorney General
State of Delaware
844 North French St., 6th Floor
Wilmington, DE  19801


I, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on __December 30, 2007__
(Date)

__Artel Hopkins__
(Declarant's Signature)

EFiled: Nov 15 2007 1:47PM
Filing ID 17089015
Case Number 250,2007

## IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| ARTEL HOPKINS, | § |
| | § No. 250, 2007 |
| Defendant Below- | § |
| Appellant, | § |
| | § Court Below—Superior Court |
| v. | § of the State of Delaware |
| | § in and for Sussex County |
| STATE OF DELAWARE, | § Cr. ID No. 0402002032 |
| | § |
| Plaintiff Below- | § |
| Appellee. | § |

Submitted: September 27, 2007
Decided:   November 15, 2007

Before **BERGER, JACOBS** and **RIDGELY**, Justices.

### O R D E R

This 15th day of November 2007, upon consideration of the appellant's opening brief and the appellee's motion to affirm pursuant to Supreme Court Rule 25(a), it appears to the Court that:

(1)   The defendant-appellant, Artel Hopkins, filed an appeal from the Superior Court's April 27, 2007 order denying Hopkins' motion for postconviction relief pursuant to Superior Court Criminal Rule 61. The plaintiff-appellee, the State of Delaware, has moved to affirm the Superior Court's judgment on the ground that it is manifest on the face of Hopkins' opening brief that the appeal is without merit. We agree and affirm.

*ATTACHED*

(2)    In 2004, a Superior Court jury found Hopkins guilty of Trafficking in Cocaine, Possession with Intent to Deliver Cocaine, Maintaining a Building for Keeping Controlled Substances, Conspiracy in the Second Degree, and Possession of Drug Paraphernalia.    He was sentenced to a total of 41 years at Level V, to be suspended after 18 years for decreasing levels of supervision.  Hopkins' convictions and sentences were affirmed by this Court on direct appeal.[1]

(3)    In this appeal, Hopkins claims that: a) the constitutional principle of separation of powers was violated when the Superior Court granted the State's motion to release cocaine seized in another case for use in the undercover sting operation that resulted in Hopkins' arrest, and, at trial, permitted the prosecutor to question a police detective about the origin of the cocaine; and b) certain remarks made by the prosecutor in his closing argument impermissibly infringed on Hopkins' constitutional right not to testify.

(4)    Hopkins first claims that there was a violation of the constitutional docrine of separation of powers.  Because the claim was raised neither at trial nor in his direct appeal, it is procedurally defaulted.[2] However, Hopkins argues that a miscarriage of justice occurred due to the

---

[1] *Hopkins v. State*, 893 A.2d 922 (Del. 2006).
[2] Super. Ct. Crim. R. 61(i) (3).

\*ATTACHED\*

2

constitutional violation and due to his counsel's ineffective assistance in failing to object to it, which overcomes the procedural bar.[3]

(5)     The separation of powers doctrine forbids one branch of government from exercising powers properly belonging to another branch.[4] In this case, the Superior Court granted the State's motion for release of cocaine evidence from another case for use in the undercover sting operation that led to Hopkins' arrest. Subsequently, during the trial, a police detective involved in the sting operation explained, under questioning by the prosecutor and without objection from defense counsel, how the cocaine used in the operation had been obtained. There is no evidence in this case that one branch of government attempted to exercise the powers properly belonging to another branch. As such, the separation of powers doctrine is not implicated.

(6)     In order to prevail on his claim of ineffective assistance of counsel, Hopkins must demonstrate that his trial counsel's representation fell below an objective standard of reasonableness and that, but for his counsel's unprofessional errors, there is a reasonable probability that the outcome of his trial would have been different.[5]    Although not insurmountable, the

---

[3] Super. Ct. Crim. R. 61(i) (5).

[4] 16A Am. Jur. 2d, Constitutional Law, § 246.

[5] *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

3          *ATTACHED*

Strickland standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable."[6]   Hopkins' ineffectiveness claim fails because he has not demonstrated that he was prejudiced by any alleged error on the part of his counsel. Thus, for all of the above reasons, we conclude that Hopkins' first claim is unavailing.

(7)   Hopkins' second claim is that his constitutional right not to testify was infringed. The basis for the claim is the prosecutor's statement in closing argument that " . . . you may have more faith in a process when poker is played with the cards up and they are all on the table than when some of them are kept concealed underneath the table and only a few are placed up for you to view." Like Hopkins' first claim, this claim is procedurally defaulted because it was raised neither at trial nor on direct appeal.[7]   However, Hopkins argues that the constitutional violation overcomes the procedural bar.[8]

(8)   The record does not support Hopkins' interpretation of the prosecutor's statement as an infringement on his constitutional right not to testify, however. Rather, the statement more reasonably refers to the quantity of evidence against Hopkins presented by the State. As such, the

---

[6] *Flamer v. State*, 585 A.2d 736, 753 (Del. 1990).

[7] Super. Ct. Crim. R. 61(i) (3).

[8] Super. Ct. Crim. R. 61(i) (5).

4

claim is without merit. Moreover, as with his first claim, Hopkins' argument that his counsel erred by failing to object to the prosecutor's statement is without merit because the statement was not objectionable. We conclude, therefore, that Hopkins' second claim also is unavailing.

(9)    It is manifest on the face of Hopkins' opening brief that his appeal is without merit because the issues presented on appeal are controlled by settled Delaware law and, to the extent that judicial discretion is implicated, there was no abuse of discretion.

NOW, THEREFORE, IT IS ORDERED that, pursuant to Supreme Court Rule 25(a), the State of Delaware's motion to affirm is GRANTED. The judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ Jack B. Jacobs
Justice

# EXHIBIT A

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| ARTEL HOPKINS, | ) |
| | ) No. 540, 2004 |
| Defendant Below, | ) |
| Appellant, | ) Court Below: Superior Court |
| | ) of the State of Delaware in |
| v. | ) and for Sussex County |
| | ) |
| STATE OF DELAWARE, | ) Cr. A. Nos. S04-02-06531 through 06571 |
| | ) ID No. 0402002032 |
| Plaintiff Below, | ) |
| Appellee. | ) |

Submitted: February 1, 2006
Decided: March 2, 2006

Before **STEELE**, Chief Justice, **HOLLAND** and **RIDGELY**, Justices.

Upon appeal from the Superior Court. **AFFIRMED**.

John S. Malik, Wilmington, Delaware for appellant.

Kim Ayvazian, Department of Justice, Georgetown, Delaware for appellee.

**STEELE**, Chief Justice:

The defendant, Artel Hopkins, appeals his convictions in Superior Court for Trafficking in Cocaine of 100 Grams or Greater, Possession with Intent to Deliver Cocaine, Maintaining a Building for Keeping Controlled Substances, Conspiracy Second Degree, and Possession of Drug Paraphernalia. Before trial, Hopkins made a discovery request. The State responded that it intended to call an expert witness to testify that the drugs were possessed with the intent to distribute rather than for personal use. During the course of trial, the State played a surveillance videotape of the drug transaction in which Hopkins uttered a phrase in the vernacular of the drug trade. The State later recalled its expert to testify to the meaning of the phrase. The defendant objected that the expert's testimony on recall was outside the scope of the State's discovery response and asked the trial judge to exclude the testimony as a sanction for the State's alleged discovery violation. After hearing arguments from both sides, the trial judge ruled that the proposed expert testimony interpreting the vernacular drug phrase was within the scope of the State's discovery response and that the State did not violate its discovery obligations. Hopkins appeals this ruling. He also claims that there was insufficient evidence for a rational trier of fact to conclude beyond a reasonable doubt that he maintained a building for keeping controlled substances. We agree with the trial judge that the State did not violate its discovery obligations and that the proposed expert testimony was within the scope of the State's discovery response. We further

2

conclude that there was sufficient evidence supporting the maintaining a building conviction. Therefore, we affirm the convictions.

## Fact and Procedural History

In February 2000, police arrested Pedro Marte for cocaine trafficking at the Best Western Hotel in Seaford, Delaware. Marte pleaded guilty to trafficking in cocaine and was sent to the Sussex Correctional Institute in September 2000. While Marte was incarcerated, he met Raymond Bacon. Marte told Bacon that he was a "kingpin" with access to "a lot of drugs." The two also discussed the possibility of future drug transactions. On December 11, 2003, after serving thirty-nine months, Marte was released from prison.

Less than two months after his release from prison, Marte arranged the delivery of two kilograms of cocaine in Delaware. Detective Dan Wright, a member of the Delaware State Police Special Investigation Unit, initiated an investigation of Marte. On January 30, 2004, Wright arrested Marte for possession of the two kilograms of cocaine. Marte agreed to assist the DSP in their cocaine trafficking investigations in the hope of a favorable plea and sentencing recommendation. Marte informed Wright that he knew two people in Delaware who were actively seeking to buy large quantities of cocaine. One was Raymond Bacon. The DSP decided to conduct a "reverse" sting operation using Marte and

3

cocaine provided by the police to set up a drug deal with Bacon.  To set the operation in motion, Wright instructed Marte to contact Bacon.

On February 2, 2004, while Wright monitored the conversation, Marte placed a call to Bacon. Marte asked Bacon if he or anybody he knew might want to buy drugs. Bacon responded that his friend, "Artel" was interested.  Artel Hopkins, the defendant below and appellant here, understood the conversation because he was with Bacon at the time Bacon spoke with Marte.  Moreover, Bacon related portions of the conversation to Hopkins during the course of the telephone call. The parties agreed that Marte would sell Bacon and Hopkins two kilograms of cocaine for $47,000 with the understanding that Hopkins would provide the money.  Marte informed Bacon that he would travel to Seaford the next day and call Bacon when he arrived. Bacon, in turn, informed Hopkins that Marte was coming down the next day. Marte and Bacon also discussed getting a hotel room to carry out the transaction. Bacon seemed to like the idea of getting a hotel room because there they would be able to "cook" the cocaine to test its quality.

On February 3, 2004, the DSP rented two adjoining hotel rooms at the Best Western Hotel in Seaford, Delaware. The DSP set up video and audio surveillance of Room 307. They then picked Marte up from prison and escorted him to the hotel room. Once there, Marte placed a telephone call to Bacon, who was riding in a car with Hopkins at the time, and told Bacon to meet him at the Best Western. After

4

the phone call, Hopkins turned the car around and went south to Georgetown to get the $47,000. Hopkins went into a house on a back road and came out with a black bag containing the money. Hopkins and Bacon then drove to the Best Western.

When they arrived at the hotel, Bacon called Marte and asked Marte for his room number. Bacon then went to Room 307 while Hopkins remained in the vehicle in the parking lot. After entering the room, Bacon called Hopkins to tell him the room number. Either Bacon or Hopkins asked if there was a stove in the room. After finding out that there was not, Hopkins left the Best Western and drove to Wal-Mart and purchased a hot plate. Shortly thereafter, Hopkins returned to the Best Western and joined Bacon and Marte in Room 307. Hopkins entered Room 307 with a blue Wal-Mart bag and the black bag he picked up from the house in Georgetown. Hopkins also brought a digital scale, some baking soda he bought at another store, and a bag of rubber bands. After Hopkins entered the room he placed the black bag on the bed. He opened it, grabbed a grocery bag that was inside the black bag and opened the grocery bag. The grocery bag contained the $47,000. Marte flipped through the stacks of money to make sure that there were no single dollars in the middle. Satisfied that there was actually $47,000 in the bag, Marte called a DSP detective who brought the drugs into the room and handed them to Marte. Hopkins indicated that he needed to test the cocaine because he had previously been "beat for six" (lost a large amount of money when

5

he purchased drugs that were "not good."). While preparing to cook the cocaine, Hopkins reached into the bag with the cocaine while Bacon was plugging in the hot plate. At that point, the DSP came into the room and arrested everyone present.

Pursuant to Superior Court Criminal Rule 16(a)[1], Hopkins's defense attorneys filed two pre-trial discovery requests asking the State to disclose any expert testimony that it planned to introduce under D.R.E. 702, 703 and 705 including the names of any experts and a summary of the substance of their testimony. The State responded by indicating that it planned to call Wright "to testify as an expert that the drugs were possessed with the intent to deliver rather than for personal use." The State also advised that Wright's opinion would be "based upon his training and experience as well as the attendant circumstances with respect to this particular case."

During the course of Marte's direct testimony at trial, the State played the surveillance videotape of Room 307. In the videotape, Hopkins made the statement that he had previously been "beat for six." The State later recalled Wright. In questioning Wright, the prosecutor asked "do you recall a conversation about being

---

[1]    SUPERIOR COURT CRIMINAL RULE 16(a)(1)(E) provides that "Upon request of a defendant, the state shall disclose to the defendant any evidence which the state may present at trial under Rules 702, 703, or 705 of the Delaware Uniform Rules of Evidence. This disclosure shall be in the form of a written response that includes the identity of the witness and the substance of the opinions to be expressed."

'beat for six'?" Wright began to explain what "beat for six" meant. Defense counsel then objected that the State had not laid the foundation to support Wright's expertise in interpreting drug code or lingo. The trial judge permitted the prosecutor to question Wright outside the presence of the jury to establish whether the detective was qualified as an expert to testify as a translator of the lingo of the drug trade.

After the questioning, defense counsel acknowledged that Wright was qualified to testify about the meaning of "beat for six" but objected to the testimony on the grounds that it was outside the scope of the State's response to the defense's Rule 16 request because the State's Rule 16 response only indicated that Wright would testify on the issue of whether the cocaine was possessed with the intent to deliver or for personal use. Defense counsel objected that this testimony surprised the defense and that had the defense known in advance of trial that Wright would so testify the defense would have sought an expert to counter Wright's "beat for six" interpretation. Accordingly, defense counsel urged the trial judge to sanction the State for the alleged discovery violation by excluding Wright's proposed testimony regarding the meaning of the vernacular phrase "beat for six."

After hearing arguments from each party and after a weekend break in the trial, the trial judge ruled that the Wright could testify about the meaning of "beat

7

for six." In the presence of the jury, Wright explained that "beat for six," meant that Hopkins had previously been "ripped off" in a drug deal. More specifically, Wright elaborated:

> The "beat" means that whatever – the "beat for six", six is a number. "Beat" means that whatever Mr. Hopkins was intending to get, he did not get. In that case, he was saying he was beat for six....We were in the middle of a two-kilo cocaine deal and Mr. Hopkins is being apologetic to a subject he had never met before. He doesn't want to offend a possible supplier in the future, so he is apologizing and stating that he wants to test it because he had been beat or ripped off or did not get exactly what he wanted, and the six would be the kilos of cocaine.

Hopkins appeals from the trial judge's ruling allowing the State to present the testimony interpreting "beat for six" claiming that the trial judge erred because the facts support the conclusion that the State violated Superior Court Criminal Rule 16 and the trial judge erroneously concluded that there was no discovery violation. Hopkins also argues that there was insufficient evidence to support a conviction of Maintaining a Building for Keeping Controlled Substances. Using a narrow dictionary definition of "maintain," Hopkins contends that because the DSP rented the hotel room and because he was only in the room for "several fleeting minutes before he was arrested," his conviction for Maintaining a Building cannot stand.

8

## 1. **The State's alleged Superior Court Criminal Rule 16 discovery violation.**

We review alleged discovery violations and will reverse a trial judge's ruling only "if the substantial rights of the accused are prejudicially affected."[2]  When reviewing a discovery violation, we apply a three part test examining: (1) the centrality of the error to the case; (2) the closeness of the case; and (3) the steps taken to mitigate the results of the error.[3]  When a trial judge finds that the State has committed a discovery violation, he has "broad discretion to fashion the appropriate sanction."[4]  In this case, however, we must first determine whether or not the trial judge correctly held that the State committed no Rule 16 violation. Both parties suggest that our review is *de novo*.  We will, however, review this decision for an abuse of discretion.[5]  Because we agree with the trial judge that the

---

[2]     *Secrest v. State*, 679 A.2d 58, 63 (Del. 1996) (citing *Ray v. State*, 587 A2d. 439, 441 (Del. 1991)).

[3]     *Ray*, 587 A.2d at 441 (quoting *Skinner v. State*, 575 A.2d 1108, 1126 (Del. 1990)).

[4]     *Cabrera v. State*, 840 A.2d 1256, 1263 (Del. 2004).

[5]     Hopkins cites *Secrest*, 679 A.2d at 63, n.7 to support the proposition that our review is *de novo*. The State did not contest that this standard applies. In *Secrest*, the defendant claimed that the State violated Rule 16 by failing to disclose that it intended to offer certain expert testimony. Citing *Ray v. State*, 587 A.2d 439 (1991) Secrest argued that we should review the issue under an abuse of discretion standard. In footnote 7, we explained that in *Ray* we "appeared to apply, however, plenary review." *Secrest's* footnote 7 creates some confusion about the appropriate standard of review in cases like this one. To clear up that confusion, we set forth the general rule: while we review a trial judge's *interpretation* of the Superior Court Rules relating to discovery *de novo*, we review the trial judge's *application* of those rules for an abuse of discretion. *See Jackson v. State,* 654 A.2d 829, 832 (Del. 1995) ("[A]s a Court of last resort, this Court's interpretation of the applicability of rules of court, as well as statutes, must control."); *ABB Flakt, Inc. v. National Union Fire Ins. Co.*, 731 A.2d 811, 815 (Del. 1999) ("This Court reviews

State did not violate Rule 16, we need not engage in the three-part test to determine whether Hopkins's substantial rights were prejudicially affected.    Accordingly, Hopkins's appeal on this issue must fail.[6]

As noted above, the State responded to the Hopkins's pre-trial Rule 16(a) discovery request regarding expert opinions and the substance thereof by informing Hopkins that it intended to call Wright to:

> testify as an expert that the drugs were possessed with the intent to deliver rather than for personal use. Det. Wright's opinion will be based upon his training and experience as well as the attendant circumstances with respect to this particular case.

The trial judge concluded that Wright's expert testimony about the meaning of "beat for six" fell within the scope of the State's discovery response.    We agree with the trial judge's ruling and rationale.    In explaining his decision the trial judge noted:

> In the context of the drug trade where significant weight transactions are involved and in the context of the evidence in this case, Detective Wright's opinion is that "beat for six" means that the defendant

---

a trial court's application of discovery rules for abuse of discretion."); *Pepsico, Inc. v. Pepsi-Cola Bottling Co.*, 261 A.2d 520, 521 (Del. 1969) ("[A]ll discovery rulings are interlocutory and discretionary.")

[6]    Because we find that the State did not violate its obligations under Rule 16, we need not discuss Hopkins's conclusory claim that he was "denied his state and federal constitutional rights to a fair trial when the trial court admitted into evidence expert testimony interpreting the drug lingo...." *See e.g., United States v. Johnson*, 228 F.3d 920, 924 (8th Cir. 2000) (citing *Weatherford v. Bursey*, 429 U.S. 545 (1977)) ("Criminal defendants do not have a general constitutional right to discovery [citation]. In most circumstances, then, a defendant must point to a statute, rule of criminal procedure, or other entitlement to obtain discovery from the government.")

previously had been hoodwinked on a kilo transaction. This explains why the defendant appeared to be apologetic and why the two kilos of cocaine would be tested, all of which shows the defendant's commercial interest and intent.

Without expert opinion to translate it, the phrase would be meaningless to the jury. The defendant contends that the evidence should be excluded under Criminal Rule 16. Criminal Rule 16 requires that experts be identified and the substance and grounds of their opinions be disclosed upon request.

The State did respond to the defense request on this subject. Wright was identified as an expert in the Special Investigations Unit. The subject matter of the opinion was that the defendant possessed cocaine with the intent to deliver cocaine. Further, that the defendant did not intend the cocaine for personal use.

The phrase "beat for six" supports the commercial nature of the transaction. It is within the umbrella of the disclosed area of Wright's opinion. The defendant's words, as translated, are part and parcel of the commercial venture and enterprise.

Further, the defendant had also been supplied with the video-tape which had the recorded statement. Both defendant's present and former counsel had access to them. It should come as no surprise that the defendant made the statement. It should also come as no surprise that the disclosed expert would be asked questions as to what the phrase meant from a commercial or personal perspective in the context of this case....I do not find a Rule 16 violation in this case.

Given that the defense had access to the tape before trial, that the State disclosed

that Wright was going to testify at trial about the commercial nature of the

transaction, and that Hopkins apparently uttered the phrase "beat for six"

apologetically to explain why he wanted to test the quality of the two kilograms of

cocaine in this case, we agree with the trial judge that "beat for six" supports the

11

commercial nature of the transaction and is thus within the scope of the State's discovery response that Wright would be called to offer his view on why the transaction was "commercial" and not personal. Thus it was not error to allow Wright to interpret the phrase "beat for six" for the jury.[7]

Hopkins suggests that permitting the State to make overly broad statements about the subject matter of an expert witness's proposed testimony and then to argue that a very specialized and specific area of expert testimony falls within the scope of the overly broad disclosed areas of the expert's opinion makes a mockery of Rule 16 and renders it meaningless to discovery's goals of avoiding surprise and streamlining substantive trial preparation. As a general matter we agree. Indeed, we have emphasized this same concern in the past: "When the defense makes specific authorized discovery demands, the State should make specific and accurate replies....When the State provides a casual reply in answer to specific defense demands, the State is to be held accountable for any inaccuracies in its

---

[7]    Although the trial judge determined that there was no Rule 16 violation, he also engaged in an alternative and hypothetical prejudice analysis and concluded that even if there was a violation, it was "technical and no more than inadvertent....Nothing supports the idea that the State had a motive to hide and sandbag the defendant with this evidence. Indeed, there are other statements and evidence which suggest that the defendant was previously involved with drugs commercially." The trial judge also concluded that the defendant suffered no prejudice: "the defendant had reason to know, from all the evidence, that his prior commercial involvement with drugs was known and in play for this trial." As we noted, however, because we agree that no Rule 16 violation occurred, we need not reach the issue of prejudice.

12

general reply."[8] In this case, however, the State's response was neither casual nor inaccurate.[9] Importantly, in our view, defense counsel had access to the videotape before the trial, could hear the "beat for six" comment in the tape, and could assess before trial its implication for the scope and context of Wright's expected testimony about the commercial nature of the thwarted transaction and Hopkins's explanation about why he needed to test the cocaine. Defense counsel knew or should have suspected that Wright's testimony concerning the commercial nature of the transaction might include comments explaining why Hopkins needed to test the cocaine. Thus, we conclude that defense counsel was neither unfairly surprised nor did the State's response render defense counsel's substantive trial preparation meaningless.

Hopkins relies on several cases to support his argument that the State violated its Rule 16 discovery obligations here. These cases are factually distinguishable. He relies most heavily on *United State v. Cruz.*[10] In *Cruz*, also a case involving a drug sting operation, the government disclosed that it planned to

---

[8]     *Johnson v. State*, 550 A.2d 903, 910-911 (Del. 1988).

[9]     While a more precise discovery response might have been more helpful to the defense, the State did not intentionally nor inadvertently disguise the basis for and nature of Wright's proposed testimony. As a matter of best practices, the State can and should easily avoid litigating these issues at trial and on appeal by erring on the side of more precise and detailed discovery responses.

[10]    363 F.3d 187 (2nd Cir. 2004).

13

call one DEA agent to testify as an expert in the distribution and pricing of heroin.[11]   During trial, in addition to calling the first DEA agent as an expert witness, the government called a second DEA agent as a fact witness to testify "about what he had seen during [the] surveillance operation."[12]   The second DEA agent testified about several statements the defendant made after his arrest. Specifically, the defendant explained that he was present at the location "to watch" the "back" of a participant in the drug deal. After the second DEA agent related the defendant's statement, the prosecutor asked the agent to explain the meaning of the phrase "to watch someone's back."   The second DEA agent responded that an individual who "watches someone's back" is synonymous with a "lookout" in a "narcotics transaction."[13]   The government agreed that this interpretation was expert testimony from a fact witness.

The Second Circuit explained that it is:

> well settled that the government may elicit expert testimony from a properly qualified expert witness regarding the parlance of the narcotics trade and the meaning thereof [because] drug dealers often camouflage their discussions... [Therefore] expert testimony explaining the meaning of code words may assist the trier of fact to understand the evidence or to determine a fact in issue.[14]

---

[11]   *Id.* at 196, n.2.

[12]   *Id.* at 193.

[13]   *Id.*

[14]   *Id.* at *194.*

14

Nonetheless, the court concluded that the trial judge erred by allowing the government to overreach by admitting expert testimony from a fact witness not disclosed as an expert in pre-trial discovery responses, particularly when the interpreted phrase did not fall within the ambit of drug jargon.[15] There was no evidence in the record that the meaning of the phrase "to watch someone's back" constituted a drug code.[16] "In the absence of such evidence, this is an ambiguous phrase that, without more, may refer to any number of situations that are not related to narcotics transactions."[17] Under the circumstances, the second DEA agent "strayed from the scope of his expertise when he offered expert opinions regarding the meaning" of the ambiguous phrase.[18]

Unlike the government in *Cruz*, here the State did disclose that it was going to call Wright as an expert witness in pretrial discovery. Moreover, the meaning of the unambiguous phrase "beat for six" was intertwined with the commercial nature of the transaction and Hopkins's explanation for why he needed to cook the

---

[15]    *Id.* at 195-196, 199.

[16]    *Id.* at 196.

[17]    *Id.*

[18]    *Id.* at 197. The Second Circuit also chastised the government for failing to adhere to its representation regarding compliance with the federal version of Rule 16, noting that the prosecution did not notify the defense counsel that it would call the second DEA agent as an expert witness at all. Thus, the district court erred in allowing the second DEA agent to testify as an expert witness in the face of the defendant's objections. *Id.* at 196, n2.

15

cocaine. Finally, Wright neither strayed from the scope of his expertise nor from the scope of the State's pretrial discovery. *Cruz* is distinguishable and, therefore, not persuasive.

Hopkins also relies on *Secrest v. State.*[19] In *Secrest*, a second degree murder case arising out of a automobile collision, the State's expert initially testified about "accident reconstruction." On rebuttal, the State recalled the expert to testify based on his knowledge of "occupant kinematics" that the defendant was the driver and the victim was the passenger. The defendant objected to the admission of the testimony based on "occupant kinematics" because the state failed to disclose that it intended to offer that expert opinion.[20] While reversing on other grounds, we agreed that there was a disclosure violation.[21]

*Secrest* provides very little guidance in the case at bar. As should be obvious, determining whether the State violated its discovery obligations by failing to make required Rule 16 disclosures is a fact-intensive inquiry that must conducted on a case-by-case basis. Similarly, the other cases Hopkins cites stand for the correct general rule of law but provide little help in engaging in the

---

[19]    679 A.2d 58 (Del. 1996).

[20]    *Id. at* 61-63.

[21]    *Id. at* 64.

16

contextual inquiry about whether the State violated its discovery obligations in this case.[22]

Based on the foregoing, we conclude that the State neither violated its Rule 16 discovery obligation nor offered testimony outside the scope of its discovery response. Accordingly, Hopkins first claim on appeal fails.

## 2. Hopkins's claim that there was insufficient evidence to convict him of Maintaining a Building for Keeping Controlled Substances.

Hopkins argues that the State failed to present sufficient evidence to convict him of Maintaining a Building for Keeping Controlled Substances in its case in chief. We review *de novo* a trial judge's denial of a defendant's motion for a judgment of acquittal to determine whether a rational trier of fact, viewing the evidence in the light most favorable to the State, could find the defendant guilty beyond a reasonable doubt of all the elements of the crime.[23] In this case, Hopkins never moved for a judgment of acquittal before the trial judge. Therefore, our

---

[22]     Hopkins also cites *Condon v. State*, 597 A.2d 7 (Del. 1991) (State could not have presented expert testimony concerning gradual disclosure by victims of sexual abuse on direct examination because it failed to give adequate pre-trial notice of the intent to use the testimony, but the State could offer the expert testimony on redirect after the defense opened the door.); *Wheat v. State*, 527 A.2d 269 (Del. 1987) (To use expert testimony to provide trier of fact background cornering behavior of an alleged child abuse victim based on expert's experience the State must provide notice of its intention to use such a witness sufficiently in advance of trial to enable the defendant to prepare to cross-examine the witness.); *United States v. Soto-Beniquez*, 356 F.3d 1 (1st Cir. 2003) (Trial judge compensated defendants for government's failure to adhere to technical requirements of Fed. R. Crim. P. 16 by certifying the witness only as a ballistics expert and refusing to certify him as a firearms expert.).

[23]     *Priest v. State*, 879 A.2d 575, 577 (Del. 2005) (citing *Hardin v. State*, 844 A.2d 982, 989 (Del. 2004)).

standard of review is plain error.[24]  "Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[25]  Even under a *de novo* standard, however, we are satisfied that there was sufficient evidence for a rational finder of fact, viewing the evidence in the light most favorable to the state, to find Hopkins guilty beyond a reasonable doubt.

Hopkins argues that the word "maintain" is not defined in the statute and that, therefore, we must use the "common dictionary definition."  He defines "maintain" very narrowly suggesting that "to maintain" "is to make a situation continue in the same way as before."  Because the DSP leased the hotel room and he was only in the room for fleeting minutes before he was arrested, Hopkins suggests that his presence in the room was "merely incidental."  As such, Hopkins concludes, a rational trier of fact could not have found that he did anything to "maintain" or "keep" Room 307 for the purpose of delivering or keeping controlled substances.  We disagree.

Hopkins was convicted under 16 Del. C. § 4755(a)(5), which provides that it is a crime for a person:

---

[24]   *Hainey v. State*, 878 A.2d 430, 433 (Del. 2005).

[25]   *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).

> Knowingly to *keep or maintain* any store, shop, warehouse, ***dwelling, building,*** vehicle, boat, aircraft or other structure or place which is resorted to by persons using controlled substances ... for the purpose of using these substances or which is used for keeping or delivering them ....

In *Priest v. State*[26], we examined the application of this statute to the crime of "Maintaining a Vehicle for Keeping Controlled Substances." After examining the relevant "Maintaining a Vehicle" jurisprudence, we set forth the general rule that "the critical benchmark for determining the sufficiency of the evidence in a Maintaining a Vehicle prosecution has been the degree of the defendant's control *or use* of the vehicle in connection with the possession of drugs."[27] We also noted that "the crucial inquiry [was] whether [the defendant] knew that he was using the car to facilitate ... [the] attempted drug deal."[28] Thus we held, that to "sustain a finding of guilt on a Maintaining a Vehicle charge, the State must offer evidence of some affirmative activity by the defendant to utilize the vehicle to facilitate the possession, delivery, or use of controlled substances."[29]

---

[26]    879 A.2d 575 (Del. 2005).

[27]    *Id.* at 579-580 (emphasis added) (discussing *State v. Rhinehardt,* 1990 Del Super. LEXIS 9 (Del. Super 1990), *Lonergan v. State*, 590 A.2d 502 (Del. 1991); *McNulty v. State*, 655 A.2d 1214 (Del. 1995); *Watson v. State*, 755 A.2d 390 (Del. 2000)(TABLE); and *Fletcher v. State*, 2005 Del. LEXIS 124 (Del. 2005)).

[28]    *Id.* at 580.

[29]    *Id.* at 576.

Given the structure of the statute and our interpretation in *Priest* with respect to vehicles, we see no need to resort to the dictionary definition of the word "maintain" to determine whether the evidence is sufficient to sustain Hopkins's conviction for "Maintaining a Building." Instead, we will apply the *Priest* inquiry to analyze the sufficiency of evidence for all "Maintaining" charges under §4755(a)(5) regardless of the type of vehicle or structure involved. Thus, in this case, we must determine whether the State offered evidence of some affirmative activity by Hopkins to use the hotel room to facilitate the possession, delivery, or use of cocaine. In conducting this inquiry we note that "ownership of the [building] is not required under the statute" and that a single incident of using a building to facilitate a drug deal is sufficient to convict.[30] Thus, the crucial inquiry here is whether Hopkins knew that he was using the hotel room to facilitate the attempted drug deal.

The companion cases of *Priest* and *Fletcher* provide useful guides in making this determination. The cases both arose out of the same incident. Deborah Powell drove to the Manchester Square Apartments in Dover looking for a friend. Fletcher, who was seeking transportation to buy crack cocaine, approached Powell

---

[30] *Fletcher v. State*, 2005 Del. LEXIS 124, *8 (Del. 2005). Because Hopkins did not make the argument on appeal, there is no need for us to address footnote 22 of *Priest* in which we explained that most, if not all, other Uniform Controlled Substances Act jurisdictions reject the "single occurrence" approach to "Maintaining" convictions that Delaware endorses. As in *Priest*, "we have no occasion to reassess our position vis-à-vis the other states."

and asked to borrow her car. He promised Powell a small amount of money or cocaine in return for the use of the car. Powell refused to lend Fletcher her car, but agreed to drive him to a nearby Bob Evans restaurant. Priest, who was not present during this conversation, arrived later and joined Fletcher in Powell's car. With Fletcher sitting in the front passenger seat and Priest in the rear, Powell drove both men to the Bob Evans. Once there, Powell and Priest waited in the car while Fletcher went into the restaurant. Thirty or forty seconds later, Fletcher returned to the car and told Powell, "they're not here."[31]

> As they were leaving the restaurant parking lot, Powell failed to signal when she made a turn. A police officer who was conducting undercover surveillance in the area pulled them over. Powell testified that when the police pulled them over Fletcher told Priest "you better run." As the police were approaching the car, Powell heard her glove box open and close and she saw Fletcher fumbling with something. She also observed Priest shoving something down into the back seat cushion. When the police searched the car they found cocaine in the glove box, a digital scale in the side pocket of the passenger door, and a loaded handgun in the crevice of the back seat.[32]

Both Priest and Fletcher were convicted of Maintaining a Vehicle for Keeping Controlled Substances. Both appealed. We affirmed Fletcher's convictions and reversed Priest's. In so doing, we noted that Fletcher had "actual possession and control over the cocaine, and that he personally solicited Powell to

---

[31]    *See Fletcher,* 2005 Del. LEXIS 124 at*2-*3, *Priest,* 879 A.2d at 576-577.

[32]    *Fletcher,* 2005 Del LEXIS 124 at*2-3.

give him a ride."[33]  Thus, there was "significant evidence of [Fletcher's] direct involvement in maintaining the vehicle."

Conversely, in *Priest*, we explained that the crucial inquiry was whether Priest knew he was using the car to facilitate Fletcher's drug deal, "not whether Priest knew only that Fletcher was about to buy drugs, with Priest happenstance being present in the car alongside Fletcher."[34]  We acknowledged that it is possible "to imagine a scenario where a passenger's actions might adequately demonstrate his knowledge that the vehicle was kept or maintained for illegal drug activity," but that the facts did not support that scenario.[35]

In this case, although Bacon and Marte spoke about leasing the hotel room and the DSP actually leased it, Hopkins had sufficient involvement and knowledge that the room was to be used to facilitate the attempted drug deal.  Upon finding out that there was no stove in the room, Hopkins left to purchase a hot plate.  After purchasing the hot plate, Hopkins returned to the room with the hot plate, baking soda, a digital scale, and $47,000.  Right before the DSP burst into the room, Hopkins was handling the cocaine while Bacon was plugging in the hot plate.

---

[33]    *Id. at* \*9-\*10.

[34]    *Priest*, 879 A.2d at 580.

[35]    *Id. See e.g., Thomas v. State*, 2005 Del. LEXIS 457 (Del. 2005).

The facts here are closer to *Fletcher* than *Priest*. Hopkins is like the passenger in the scenario we imagined in *Priest*. He had knowledge that the room was leased for illegal drug activity, his presence was not happenstance, and he, himself, was getting ready to spend $47,000 to buy cocaine. He brought drug paraphernalia in order to test the quality of the cocaine and to facilitate the transaction. The hotel room was essential to Hopkins in order to consummate the drug deal. The fact that the DSP paid the bill and actually leased the room is of no consequence. Moreover, here, as in *Fletcher*, there was significant evidence of Hopkins's "direct involvement" in maintaining the hotel room. Hopkins had knowledge that the room would facilitate the illegal drug activity by serving as a convenient locale where the drugs could be "cooked" to determine their authenticity. Even under a *de novo* standard of review, we conclude that there was sufficient evidence to support Hopkins's conviction for Maintaining a Building for Keeping Controlled Substances.[36]

---

[36] The jury instructions in this case first set forth the offense of Maintaining a Dwelling by quoting the relevant portion of § 4755(a)(5). The instructions then stated that in order to find Hopkins guilty of the offense that the jury must find that the State established beyond a reasonable doubt:

(1) That the defendant kept or maintained a dwelling, in this case, Room 307...; and,

(2) The dwelling was used to keep controlled substances in violation of the Uniform Controlled Substances Act; namely, for the purposes of using these substances or for the purpose of keeping or delivering controlled substances; and ,

(3) The defendant acted knowingly with regard to such activity at Room 307.... A person acts knowingly when the person knows or is aware of such activity....

23

## Conclusion

For the foregoing reasons, the judgments of the Superior Court are **AFFIRMED.**

---

These jury instructions captured the essence of the holding in *Priest*. We wish to emphasize that in all cases involving charges for "maintaining" under § 4755(a)(5) the jury instructions should include some language setting forth the rule we articulated in *Priest*: "the State must offer evidence of some affirmative activity by the defendant to utilize the vehicle [building, dwelling, etc.] to facilitate the possession, delivery, or use of controlled substances."

# EXHIBIT B

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR _____Sussex_____COUNTY

FILE COPY

STATE OF DELAWARE )
v. )
  )          No. _____
  )          (to be supplied by Prothonotary)
Artel Hopkins )
Name of Movant on Indictment )
  )
  )
_____ )
Correct Full Name of Movant )

2007 JAN 29  PM 3: 36

FILED PROTHONOTARY
SUSSEX COUNTY

**MOTION FOR POSTCONVICTION RELIEF**

## MOTION

1.   County in which you were convicted __Sussex__

2.   Judge who imposed sentence _The Honorable Richard F. Stokes_

3.   Date sentence was imposed ___11-12-04___

4.   Offense(s) for which you were sentenced and length of sentence (s):
     __Trafficking Cocaine__                              __18 years incarceration__
     __Conspiracy 2nd__                                   to be followed by various
     __Possession With Intent to Deliver__               levels of probation
     __Possession Drug Paraphernalia__
     __Maintaining Building__

5.   Do you have any sentence(s) to serve other than the sentence(s) imposed because of the judgment(s) under attack in this motion?     Yes (   )   No ( xx)
     If your answer is "yes," give the following information:
     Name and location of court(s) which imposed the other sentence(s):
     _____

     _____

     Date sentence(s) imposed: _____

     Length of sentence(s) _____

6.   What was the basis for the judgment(s) of conviction? (Check one)
         Plea of guilty (   )
         Plea of guilty without admission of guilt ("Robinson plea")   (   )
         Plea of nolo contendere   (   )
         Verdict of jury   (xx )
         Finding of judge (non-jury trial)   (   )

7.   Judge who accepted plea or presided at trial _The Honorable Richard F. Stokes_

8.   Did you take the witness stand and testify? (Check one)
     No trial (   )   Yes (   )   No (xx )

9.   Did you appeal from the judgment of conviction? Yes (xx)   No (   )
     If your answer is "yes," give the following information:

     Case number of appeal __540, 2004__

     Date of court's final order or opinion ___3-2-06___

1

10. Other than a direct appeal from the judgment(s) of conviction, have you filed any other motion(s) or petition(s) seeking relief from the judgment(s) in state or federal court? Yes ( ) No ( xx)    How many? ( )
If your answer is "yes," give the following information as to each:

Nature of proceeding(s) _____

Grounds raised _____

_____

_____

_____

Was there an evidentiary hearing?_____

Case number of proceeding(s)_____

Date(s) of court's final order(s) or opinion(s) _____

Did you appeal the result(s)?_____

11. Give the name of each attorney who represented you at the following stages of the proceedings relating to the judgment(s) under attack in this motion:

At plea of guilty or trial _____ John Malik, Esquire _____

On appeal_____ John Malik, Esquire _____

In any postconviction proceeding _____

12. State every ground on which you claim that your rights were violated. If you fail to set forth all grounds in this motion, you may be barred from raising additional grounds at a later date. You must state facts in support of the ground(s) which you claim. For your information, the following is a list of frequently raised grounds for relief (you may also raise grounds that are not listed here): double jeopardy; illegal detention, arrest, or search and seizure; coerced confession or guilty plea; uninformed waiver of the right to counsel, to remain silent, or to speedy trial; denial of the right to confront witnesses, to subpoena witnesses, to testify, or to effective assistance of counsel; suppression of favorable evidence; unfulfilled plea agreement.

2

Ground One:

This case involved a drug transaction which was entirely created by governmental authorities.    The Delaware State Police set up a drug transaction and actually supplied the drugs for the transaction.    The defendant did not bring any drugs to the transaction. This is what the police referred to as a reverse buy operation.

In this case the Court actually became involved in the investigation and setting up the transaction.  On February 3, 2004, this Court, with the Honorable E. Scott Bradley presiding, granted to the State of Delaware an ex parte motion in the case of State of Delaware v. Julian Bodnari, Del. Super., ID No. 9909027880.  In that motion this Court actually released evidence from Mr. Bodnari's case, which constituted over 1000 grams of cocaine, to the Delaware State Police to utilize in this undercover drug investigation. This was specifically brought to the attention of the jury in the case at bar.

This constituted a breach of the requirement of the separation of powers contained in both the Delaware and United States Constitutions between judicial and executive branches of government. It gave at least the appearance if not the actuality of a judiciary which was not independent and impartial in trying the case. It gave the appearance of approval from this Court of the police actions in this case to the jury. All of these things were done in violation of the Delaware and United States Constitutions.

Furthermore, since this is an error which cannot be cured by a new trial the appropriate remedy is dismissal of all charges against this defendant. A Court should not get involved in assisting the prosecution in setting up drug buys.

This issue is being raised for the first time in this Motion for Post-Conviction Relief.  It is also being raised in the context of a Motion for Ineffective Assistance of Counsel since defense counsel did not make any objection to this evidence being submitted at trial and did not move to dismiss prior to trial based upon this misconduct.

Ground Two:

Detective Wright was the chief investigating officer for the state. He testified also for the state. He presented to the jury with significant experience and expertise in the area of drug investigation.

Detective Wright testified, without objection, that there was no lawful purpose for the defendant having drugs in his possession. In fact, that was the main issue which was being tried. The defendant's state of mind as to whether he intended to actually possess the drugs and possess for the purposes which the State alleged were the issues which the jury was deciding.

No objection was made to this opinion. That constituted ineffective assistance of counsel. It was the function of the Court and not this witness to advise of the laws. This opinion was not provided as any expert opinion in discovery. Detective Wright's expertise in other areas as an experienced detective also gave this opinion an unjust indicia of reliability which the jury may have relied upon in reaching its decision. Indeed, this opinion was one of the first things cited by the prosecutor in his closing argument.

Ground Three:

The defendant did not testify at trial. The prosecutor in closing argument, in referring to the State's witnesses, indicated that it is better for the cards to be laid on the table.

While this argument specifically dealt with the State's witnesses it certainly constituted at least an indirect comment upon the defendant's silence. No objection was made by defense counsel to this argument. This statement implied to the jury that while the prosecution had laid all the cards out on the table that the defense was simply hiding behind the right to remain silent and not present any evidence. This was in violation of the Delaware and United States Constitutions.

Ground Four:

The State presented expert testimony of Detective Wright that the defendant's statement, "beat for six," constituted drug lingo. The defendant objected to this evidence being submitted since it had not been properly

identified in expert discovery. The Superior Court rejected this argument and that argument was also rejected on appeal.

Defense counsel pointed out that since he was surprised by the evidence at trial he was unable to properly fully counter that evidence. When defense counsel received the cursory discovery response regarding expert witnesses from the State he had an obligation to do more preparation. He should have asked the Court for a more detailed and definite statement as to what the expert would be testifying about and the basis of the expert's opinion. Defense counsel did not do so.

Defense counsel also did not review the videotape of the actual transaction until the final case review, which occurred shortly prior to trial. This tape is where the drug lingo phrase was included. This also prevented defense counsel from being prepared to deal with the State's presentation of that testimony. All this constituted ineffective assistance of counsel in violation of the Delaware and United States Constitutions.

Artel Hopkins

Edward C. Gill Esquire
16 N. Bedford Street
P.O. Box 824
Georgetown, DE 19947
Bar I.D. 2112

# EXHIBIT C

SUPERIOR COURT
OF THE
STATE OF DELAWARE

RICHARD F. STOKES
JUDGE

1 THE CIRCLE, SUITE 2
SUSSEX COUNTY COURTHOUSE
GEORGETOWN, DE 19947

April 27, 2007

Edward C. Gill, Esquire
P.O. Box 824
Georgetown, DE 19947

    RE: Artel Hopkins, Def. ID# 0402002032

DATE SUBMITTED: January 30, 2007

Dear Mr. Gill:

Pending before the Court is a motion for postconviction relief which defendant Artel

Hopkins ("defendant") has filed pursuant to Superior Court Criminal Rule 61 ("Rule 61"). This is

my decision denying the motion.

On or about February 3, 2004, defendant was arrested on the following charges:

trafficking in cocaine in an amount greater than 100 grams; possession with intent to deliver a

narcotic schedule II controlled substance; maintaining a building for keeping controlled

substances; conspiracy in the second degree; and possession of drug paraphernalia. Trial took

place on September 14–17, 2004 and resumed on September 20, 2004. The evidence showed the

following. After a drug-related arrest, Pedro Marte ("Marte") informed the Delaware State Police

("DSP") that he was aware two people, one of whom was Raymond Bacon ("Bacon"), were

trying to buy large quantities of cocaine. The DSP set up a "reverse" sting operation using Marte

and cocaine provided by the police to set up a drug deal. Defendant and Bacon were stung. The

1

episode was captured on videotape. The jury viewed this videotape.

Defendant was found guilty as charged. Defendant appealed and raised two issues. He argued that the trial court erred in finding that the State of Delaware ("the State") did not violate its discovery obligations with regard to a police officer's expert testimony as to the meaning of a phrase defendant uttered in the vernacular of the drug trade and that the proposed expert testimony was within the scope of the State's discovery response. He also argued that there was insufficient evidence for a rational trier of fact to conclude beyond a reasonable doubt that defendant maintained a building for keeping controlled substances. John S. Malik, Esquire ("counsel") represented defendant at trial and on appeal. The Supreme Court affirmed the convictions. Hopkins v. State, 893 A.2d 922 (Del. 2006). The mandate was dated March 20, 2006. On January 29, 2007, defendant filed his pending motion for postconviction relief.

Defendant advances four grounds for postconviction relief.

The first ground is based on the assertion that the Superior Court was involved in assisting the prosecution to set up the drug buy. Defendant maintains the following. DSP obtained the drugs which were used in the sting after obtaining their release as evidence in another criminal case which had been tried in the Superior Court. This constituted a breach of the requirement of separation between the judicial and executive branches of government. It also gave the appearance that the Superior Court was not impartial in the case and that the Court approved of the DSP's actions. Defendant admits this ground first is raised in this postconviction motion. The only exception to the procedural bar that he advances is that trial counsel was ineffective for failing to object to the evidence being submitted at trial and for not moving to dismiss the case based upon this alleged misconduct.

2

The second ground is ineffective assistance of counsel. Defendant argues that trial counsel was ineffective for not objecting to a statement by Detective Danny Wright that there was no lawful purpose for defendant to have drugs in his possession.

The third ground is that a statement by the prosecutor constituted an implied comment upon defendant's not testifying. Defendant relates the following. He did not testify at trial. In closing argument, the prosecutor "in referring to the State's witnesses, indicated that it is better for the cards to be laid on the table." This was an indirect comment on defendant's silence; it implied that the defense was hiding behind the right to remain silent. Defendant asserts that trial counsel did not object to this argument.

In ground four, defendant asserts another claim of ineffective assistance of counsel. Defendant references the discovery/drug lingo issue that he raised on appeal. He then states:

> Defense counsel pointed out that since he was surprised by the evidence at trial he was unable to properly fully counter that evidence. When defense counsel received the cursory discovery response regarding expert witnesses from the State he had an obligation to do more preparation. He should have asked the Court for a more detailed and definite statement as to what the expert would be testifying about and the basis of the expert's opinion. Defense counsel did not do so.

> Defense counsel also did not review the videotape of the actual transaction until the final case review, which occurred shortly prior to trial. This tape is where the drug lingo phrase was included. This also prevented defense counsel from being prepared to deal with the State's presentation of that testimony.

Before examining the merits of Rule 61 claims, the Court first must determine whether any procedural bars exist. In Superior Court Criminal Rule 61(i), it is provided as follows:

> (i) *Bars to relief.* (1) Time limitation. A motion for postconviction relief may not be filed more than one year after the judgment of conviction is final or, if it asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final, more than one year after the right is first recognized by the Supreme Court of Delaware or by the United States Supreme Court.
> (2) Repetitive motion. Any ground for relief that was not asserted in a prior

3

postconviction proceeding, as required by subdivision (b)(2) of this rule, is
thereafter barred, unless consideration of the claim is warranted in the interest of
justice.

(3) Procedural default. Any ground for relief that was not asserted in the
proceedings leading to the judgment of conviction, as required by the rules of this
court, is thereafter barred, unless the movant shows

(A) Cause for relief from the procedural default and

(B) Prejudice from violation of the movant's rights.

(4) Former adjudication. Any ground for relief that was formerly adjudicated,
whether in the proceedings leading to the judgment of conviction, in an appeal, in a
postconviction proceeding, or in a federal habeas corpus proceeding, is thereafter
barred, unless reconsideration of the claim is warranted in the interest of justice.

(5) Bars inapplicable. The bars to relief in paragraphs (1), (2), and (3) of this
subdivision shall not apply to a claim that the court lacked jurisdiction or to a
colorable claim that there was a miscarriage of justice because of a constitutional
violation that undermined the fundamental legality, reliability, integrity or fairness
of the proceedings leading to the judgment of conviction.

The motion was timely filed; thus, the time bar does not apply.

Defendant initially advances grounds one and three outside the context of an ineffective

assistance of counsel allegation. Those claims are barred because defendant did not assert them in

the proceedings leading to the judgment of conviction. Rule 61(i)(3). Defendant does not make any

attempt to show that exceptions to the procedural bar exists. Absent such a showing, the claims

fail.

Alternatively, defendant advances grounds one and three within the context of ineffective

assistance of counsel allegations. Grounds two and four specifically are advanced within the

context of ineffective assistance of counsel allegations.

Generally, claims of ineffective assistance of counsel are raised for the first time in a

postconviction motion filed following a direct appeal as to the trial outcome. Therefore, the

procedural bars of Rule 61 would not be applicable. But if issues raised in the Rule 61 motion

could have been raised on the direct appeal, but were not, then the defendant must comply with

4

Rule 61(i)(3) by showing cause for not raising the issue(s) on appeal and actual prejudice.

Defendant has the burden of establishing (i) deficient performance by his counsel (ii) which actually caused defendant prejudice. Strickland v. Washington, 466 U.S. 668 (1984). Deficient performance means that counsel's representation of defendant fell below an objective standard of reasonableness. Id. at 688. In considering post-trial attacks on counsel, Strickland cautions judges to review the counsel's performance from the defense counsel's perspective at the time decisions were being made. Second guessing or "Monday morning quarterbacking" should be avoided. Id. at 689.

A finding of counsels' deficient performance needs to be coupled with a showing of actual prejudice. Actual prejudice is not potential or conceivable prejudice. "The Defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

Strickland establishes that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Id. at 686.

In this case, even if the Court assumed, without deciding, that counsel's performance was deficient, all of defendant's claims fail because he has not made any attempt to show that the deficient performance caused defendant prejudice. The burden is defendant's. To emphasize, he has not made any attempt to meet that burden. Thus, the ineffective assistance of counsel claims fail.

5

For the foregoing reasons, defendant's motion for postconviction relief is denied.

IT IS SO ORDERED.

Very truly yours,


Richard F. Stokes

cc: Prothonotary's Office
    Donald R. Bucklin, Esquire
    John S. Malik, Esquire

6

# EXHIBIT D

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR SUSSEX COUNTY

THE STATE OF DELAWARE       :
                            :
                            :
v.                          :   ID # 9909027880
                            :
JULIAN BODNARI              :

## MOTION FOR RELEASE OF EVIDENCE

1) On or about July 14, 2000, Julian Bodnari was convicted following a jury trial of trafficking in cocaine, possession of a firearm during commission of a felony, carrying a concealed deadly weapon, and numerous other related offenses.

2) During the course of the jury trial the state admitted into evidence as exhibit **18** what was later established to be over 1,000 grams of cocaine.

3) On or about December 3, 2003, The Supreme Court of the State of Delaware affirmed Mr. Bodnari's conviction (2003 WL 22880372 Del. Supr. December 3, 2003)

4) The Delaware State Police have a need to utilize the evidence exhibit **18** in connection with a significant undercover drug investigation.

5) The Delaware State Police represent that the evidence will be maintained in a fashion that will ensure that exhibit **18** will be secured from release into the general public.

WHEREFORE, the State by the undersigned Deputy Attorney General respectfully requests that this Honorable Court sign an Order releasing exhibit $\underline{18}$ (cocaine) into the custody of the Delaware State Police.

Adam D. Gelof
Deputy Attorney General

2/03/04

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR SUSSEX COUNTY

THE STATE OF DELAWARE          :

                               :

                               :

v.                             :   ID # 9909027880

                               :

JULIAN BODNARI                 :

## ORDER

**AND NOW, TO-WIT**, on this  3.J  day of  Febr•y , 2004, the foregoing
Motion having been heard and considered, and upon representation by the Delaware State Police
that the contraband evidence would be useful to an ongoing criminal investigation, the State's
request for release of exhibit  18  and considering the defendant's convictions were affirmed by
the Supreme Court,

**IT IS HEREBY ORDERED** that exhibit  18  (cocaine) be released into the custody of
the Delaware State Police.

E. Scott Bradley
JUDGE

FILED PROTHONOTARY
SUSSEX COUNTY
2004 FEB -3 PM 1: 00

FM: Artel Hopkins BLDG: Merit/East
SUSSEX CORRECTIONAL INSTITUTION
P.O. BOX 500
GEORGETOWN, DELAWARE 19947
SBI# 254263

LEGAL MAIL

Clerk
U.S. District Court
Lockbox 18
844 N. King St.
Wilmington, De 19801

LEGAL MAIL