## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **ARTEL HOPKINS,** | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civ. Act. No. 08-06-SLR |
| | : | |
| **MICHAEL DELOY**, Warden, and | : | |
| **JOSEPH R. BIDEN, III**, Attorney | : | |
| General of the State of Delaware, | : | |
| | : | |
| Respondents. | : | |

## ANSWER

Pursuant to Rule 5 of the Rules Governing Section 2254 Actions, 28 U.S.C. foll. § 2254, respondents state the following in response to the petition for a writ of habeas corpus:

In February 2004, the petitioner, Artel Hopkins, was arrested and charged with trafficking in cocaine (100 grams or greater), possession with intent to deliver cocaine, maintaining a building for keeping controlled substances, second degree conspiracy, and possession of drug paraphernalia. A Delaware Superior Court jury, in September 2004, found Hopkins guilty as charged. *See* Superior Court Criminal Docket, ID 0402002032, Docket Item ("Crim. D.I.") 38. In November 2004, Superior Court sentenced Hopkins to a total of forty-one years at Level V incarceration, suspended after eighteen years for decreasing levels of supervision. *See Hopkins v. State*, 2007 WL 3385912, *1 (Del.). The Delaware Supreme Court affirmed Hopkins' convictions and sentence on appeal. *Hopkins v. State*, 893 A.2d 922, 934 (Del. 2006).

Hopkins, in January 2007, moved *pro se* for postconviction relief under Superior Court Criminal Rule 61. Crim. D.I. 67. Superior Court denied Hopkins' motion on April 27, 2007. *In*

*re Hopkins*, 2007 WL 1242313 (Del. Super. Ct.).  On appeal, the state supreme court granted the

State's motion to affirm Superior Court's decision. *Hopkins*, 2007 WL 3385912 at *2.  Hopkins'

federal habeas petition is dated December 30, 2007.  D.I. 1.

### Facts

As recited by the Delaware Supreme Court in *Hopkins v. State*, 893 A.2d 922, 924-25

(Del. 2006), the relevant facts leading to Hopkins' arrest and conviction were as follows:

> In February 2000, police arrested Pedro Marte for cocaine trafficking at the Best Western Hotel in Seaford, Delaware. Marte pleaded guilty to trafficking in cocaine and was sent to the Sussex Correctional Institute in September 2000. While Marte was incarcerated, he met Raymond Bacon. Marte told Bacon that he was a "kingpin" with access to "a lot of drugs." The two also discussed the possibility of future drug transactions. On December 11, 2003, after serving thirty-nine months, Marte was released from prison.

> Less than two months after his release from prison, Marte arranged the delivery of two kilograms of cocaine in Delaware. Detective Dan Wright, a member of the Delaware State Police Special Investigation Unit, initiated an investigation of Marte. On January 30, 2004, Wright arrested Marte for possession of the two kilograms of cocaine. Marte agreed to assist the DSP in their cocaine trafficking investigations in the hope of a favorable plea and sentencing recommendation. Marte informed Wright that he knew two people in Delaware who were actively seeking to buy large quantities of cocaine. One was Raymond Bacon. The DSP decided to conduct a "reverse" sting operation using Marte and cocaine provided by the police to set up a drug deal with Bacon. To set the operation in motion, Wright instructed Marte to contact Bacon.

> On February 2, 2004, while Wright monitored the conversation, Marte placed a call to Bacon. Marte asked Bacon if he or anybody he knew might want to buy drugs. Bacon responded that his friend, "Artel" was interested. Artel Hopkins, the defendant below and appellant here, understood the conversation because he was with Bacon at the time Bacon spoke with Marte. Moreover, Bacon related portions of the conversation to Hopkins during the course of the telephone call. The parties agreed that Marte would sell Bacon and Hopkins two kilograms of cocaine for $47,000 with the understanding that Hopkins would provide the money. Marte informed Bacon that he would travel to Seaford the next day and call Bacon when he arrived. Bacon, in turn, informed Hopkins that Marte was coming down the next day. Marte and Bacon also discussed getting a hotel room to carry out the transaction. Bacon seemed to like the idea of getting a hotel room because there they would be able to "cook" the cocaine to test its quality.

2

On February 3, 2004, the DSP rented two adjoining hotel rooms at the Best Western Hotel in Seaford, Delaware. The DSP set up video and audio surveillance of Room 307. They then picked Marte up from prison and escorted him to the hotel room. Once there, Marte placed a telephone call to Bacon, who was riding in a car with Hopkins at the time, and told Bacon to meet him at the Best Western. After the phone call, Hopkins turned the car around and went south to Georgetown to get the $47,000. Hopkins went into a house on a back road and came out with a black bag containing the money. Hopkins and Bacon then drove to the Best Western.

When they arrived at the hotel, Bacon called Marte and asked Marte for his room number. Bacon then went to Room 307 while Hopkins remained in the vehicle in the parking lot. After entering the room, Bacon called Hopkins to tell him the room number. Either Bacon or Hopkins asked if there was a stove in the room. After finding out that there was not, Hopkins left the Best Western and drove to Wal-Mart and purchased a hot plate. Shortly thereafter, Hopkins returned to the Best Western and joined Bacon and Marte in Room 307. Hopkins entered Room 307 with a blue Wal-Mart bag and the black bag he picked up from the house in Georgetown. Hopkins also brought a digital scale, some baking soda he bought at another store, and a bag of rubber bands. After Hopkins entered the room he placed the black bag on the bed. He opened it, grabbed a grocery bag that was inside the black bag and opened the grocery bag. The grocery bag contained the $47,000. Marte flipped through the stacks of money to make sure that there were no single dollars in the middle. Satisfied that there was actually $47,000 in the bag, Marte called a DSP detective who brought the drugs into the room and handed them to Marte. Hopkins indicated that he needed to test the cocaine because he had previously been "beat for six" (lost a large amount of money when he purchased drugs that were "not good."). While preparing to cook the cocaine, Hopkins reached into the bag with the cocaine while Bacon was plugging in the hot plate. At that point, the DSP came into the room and arrested everyone present.

### Discussion

In his petition for federal habeas relief and Attachment A thereto, Hopkins raises three grounds for relief: (1) the constitutional doctrine of separation of powers was violated because the prosecution was permitted to inform the jury of the trial court's involvement in the prosecution of the petitioner; (2) the prosecutor, in violation of the petitioner's Fifth Amendment rights, improperly commented on Hopkins' right not to testify; and (3) the admission into evidence, allegedly in violation of discovery rules, of expert testimony interpreting the drug

3

lingo "beat for six" denied the petitioner a fair trial. (D.I. 1 at 6-9 and Attachment A). Hopkins'

claims, however, are unavailing.

*Claim 1: Separation of powers*

Hopkins' first ground for relief is that his due process rights were violated by "outrageous

government conduct." D.I. 1, Attachment A at 1-5. Specifically, Hopkins contends that the trial

court, by granting the State's motion for release of evidence (cocaine) from an unrelated case in

order to allow police to set up the reverse sting operation, became involved in the investigation

leading to Hopkins' arrest. D.I. 1, Attachment A at 3. According to Hopkins, because the court

was involved in investigation, the court's conduct breached the separation of powers required by

the United States Constitution. *Id.* However, this Court may consider an application for a writ

of habeas corpus on behalf of "a person in custody pursuant to the judgment of a State court only

on the ground that he is in custody in violation of the Constitution or laws or treaties of the

United States." 28 U.S.C. § 2254(a). Claims based on errors of state law are not cognizable on

federal habeas review. *See Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Riley v. Harris*, 277 F.3d

261, 310 n. 8 (3d Cir. 2001). Hopkins' separation of powers claim is a state law claim and thus

review by this Court is unavailable. *See Whalen v. United States,* 445 U.S. 684, 689 n.4 (1980)

("the doctrine of separation of powers embodied in the Federal Constitution is not mandatory on

the States"); *McGautha v. California*, 402 U.S. 183, 253 n.3 (1971) (Brennan, J., dissenting on

other grounds); *Sweezy v. New Hampshire*, 354 U.S. 234, 255 (1975); *Dreyer v. Illinois*, 187

U.S. 71, 83-84 (1902); *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (separation of

powers argument was not cognizable on federal habeas review); *United States v. Newton*, 181 F.

Supp. 2d 157, 165 (E.D.N.Y. 2000) ("state separation of powers issues do not generally raise

constitutional questions").

To the extent that Hopkins raises an ineffective assistance of counsel claim for failure to argue the separation of powers issue in state court, Hopkins presented his claim to the Delaware Supreme Court on appeal from the denial of his state postconviction motion as cause for his failure to raise the separation of powers claim at trial or on direct appeal, thereby exhausting the claim. *See Smith v. Digmon*, 434 U.S. 332, 333-34 (1978); *Swanger v. Zimmerman*, 750 F.2d 291, 295 (3d Cir. 1984).

Under 28 U.S.C. § 2254(d), a habeas petitioner is not entitled to relief unless he can establish that the decision of the state court was contrary to, or involved an objectively unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Gattis v. Snyder*, 278 F.3d 222, 228 (3d Cir. 2002); *Werts v. Vaughn*, 228 F.3d 178, 196-97 (3d Cir. 2000); *McLaughlin v. Carroll*, 270 F. Supp.2d 490, 499 (D. Del. 2003). "A state court decision is contrary to Supreme Court precedent under § 2254(d)(1) where the state court reached a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Jacobs v. Horn*, 395 F.3d 92, 100 (3d Cir. 2005) (citations and internal quotations omitted). A state court decision is an unreasonable application if the court identifies the correct governing legal rule based on Supreme Court precedent but unreasonably applies it to the facts of the particular case. *Id.* (citations omitted). Moreover, factual determinations by state trial and appellate courts are presumed correct absent clear and convincing evidence to the contrary, and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light

of the evidence presented in the state-court proceeding. *See* 28 U.S.C. §§ 2254(d)(2), (e)(1). *See also Williams,* 529 U.S. at 402-13; *Affinito v. Hendricks*, 366 F.3d 252, 256-57 (3d Cir. 2004); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

The clearly established federal law which governs ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). In *Strickland*, the United States Supreme Court articulated a two-part test for evaluating an ineffective assistance of counsel claim. First, a petitioner must demonstrate that counsel's performance at trial or on appeal fell below "an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In evaluating whether counsel performed reasonably, a court "must be highly deferential." *Id.* at 689. Therefore, a petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (quotation omitted). Second, a petitioner must illustrate that counsel's ineffective performance caused prejudice. See *Strickland*, 466 U.S. at 687. The Third Circuit has stated that prejudice occurs where "there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different." *Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996) (citing *Strickland*, 466 U.S. at 668); *see also Hill v. Lockhart*, 474 U.S. 52, 58 (1985). In this case, the Delaware state courts correctly identified the two-prong *Strickland* standard applicable to Hopkins' ineffectiveness claim. *See Hopkins*, 2007 WL 3385912 at *1. Thus the state supreme court's denial of the claims was not contrary to clearly established federal law. *See Williams*, 529 U.S. at 406; *Jacobs*, 395 F.3d at 100.

Moreover, the state courts reasonably applied the rule to the specific facts of Hopkins' case. *See* 28 U.S.C. § 2254(d)(1). The Delaware Supreme Court found that "[t]here is no

evidence in this case that one branch of government attempted to exercise the powers properly belonging to another branch." *Id.* "State courts are the ultimate expositors of state law . . . ." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975); *accord Lambert v. Blackwell*, 387 F.3d 210, 239 n.24 (3d Cir. 2004); *Humanik v. Beyer*, 871 F.2d 432, 436 (3d Cir. 1989). Thus, the state supreme court's finding that there was no separation of powers violation under state law forecloses the issue. Consequently, Hopkins cannot establish prejudice from any alleged deficiency of his counsel to preserve the claim. Because Hopkins cannot show either that his counsel was objectively unreasonable in failing to object to the court's release of evidence from another case to use in the sting operation, or any prejudice as a result thereof, federal habeas review of this claim is barred.

## Claim 2: Right to testify

In his second ground for relief, Hopkins asserts that the prosecutor, in violation of Hopkins' Fifth Amendment rights, improperly commented on Hopkins' right not to testify. D.I. 1 at 8 and Attachment A at 5-8. Hopkins presented his claim to the state supreme court on appeal from the denial of his postconviction motion, thereby exhausting the claim. *See Digmon*, 434 U.S. at 333-34; *Swanger*, 750 F.2d at 295. After finding that a petitioner has exhausted state remedies, however, this Court "must then assure itself that a habeas petitioner has complied with relevant state procedural requirements before it can delve into the claim of constitutional error in a state conviction." *Bond v. Fulcomer*, 864 F.2d 306, 310 (3d Cir. 1989). Hopkins presented his claim in his postconviction motion without having presented the issue on direct appeal. *See Hopkins*, 2007 WL 1242313 at *2. Under Criminal Rule 61(i)(3), any ground for relief that was not asserted in the proceedings leading to the judgment of conviction is thereafter barred unless the petitioner shows cause for the procedural default and actual prejudice or a miscarriage of

justice due to a constitutional violation. *See* DEL. SUPER. CT. CRIM. R. 61(i)(3), (5). The

Delaware Supreme Court held that because Hopkins failed to raise this claim on direct appeal,

this claim was procedurally barred. *Hopkins*, 2007 WL 3385912 at *2. Hopkins, having failed

to raise the issue on direct appeal, thus did not comply with the relevant state procedural

requirements. As a result, federal habeas review of this claim is barred unless Hopkins

establishes cause for his procedural default in the state courts and actual prejudice. *See Coleman*

*v. Thompson*, 501 U.S. 722, 750-51 (1991); *Caswell v. Ryan*, 953 F.2d 853, 861-62 (3d Cir.

1992); *Dawson v. Snyder*, 988 F. Supp. 783, 804-05 (D. Del. 1997); *Johnson v. Ellingsworth*,

783 F. Supp. 215, 218-21 (D. Del. 1992).

To demonstrate cause for a procedural default, a petitioner must show that "some

objective factor external to the defense" precluded his compliance with state procedural rules.

*McCleskey v. Zant*, 499 U.S. 467, 493 (1991); *Murray v. Carrier*, 477 U.S. 478, 487 (1986);

*Dawson*, 988 F. Supp. at 805. To establish prejudice under the procedural default doctrine, a

petitioner "must show 'not merely that the errors at . . . trial created a *possibility* of prejudice, but

that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of

constitutional dimensions.'" *Carrier*, 477 U.S. at 493-94 (quoting *United States v. Frady*, 456

U.S. 152, 179 (1982)); *Dawson*, 988 F. Supp. at 804-05. Hopkins has alleged ineffective

assistance of counsel pre-trial, at trial and on direct appeal as cause for his procedural default.

D.I. 1 at 8; Attachment A at 6. The Delaware Supreme Court, however, found that the

prosecutor's statement in closing argument ("... you may have more faith in a process when

poker is played with the cards up and they are all on the table than when some of them are kept

concealed underneath the table and only a few are placed up for you to view") referred to "the

quantity of evidence against Hopkins presented by the State," not to Hopkins' decision not to

testify. *Hopkins*, 2007 WL 3385912 at *2. Consequently, Hopkins' attorney could not have been ineffective for failing to raise the meritless claim (and notably, Hopkins does not explain how that holding is an unreasonable application of Supreme Court precedent). Having failed to establish cause or prejudice from his counsel's alleged deficiency, Hopkins' claim that the prosecutor improperly commented on the defendant's right not to testify at trial is barred from federal habeas review.

### Claim 3: Discovery violation

In his final claim for relief, Hopkins alleges that "the trial court's decision to admit the expert testimony [regarding the interpretation of the phrase "beat for six"] was contrary to, and resulted from an unreasonable application of, clearly established U.S. Supreme Court law." D.I. 1, Attachment A at 12. Hopkins complains that state prosecutors violated Superior Court Criminal Rule 16 by failing to inform defense counsel that the expert testimony of Detective Wright would include the detective's interpretation of the drug lingo "beat for six." D.I. 1 at 9 and Attachment A at 8-14. This Court may consider an application for a writ of habeas corpus on behalf of "a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Claims based on errors of state law are not cognizable on federal habeas review. *See Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Riley v. Harris*, 277 F.3d 261, 310 n. 8 (3d Cir. 2001). Hopkins' claim for relief regarding the violation of discovery rules is a state law claim and thus review by this Court is unavailable. *Manchester v. Redman*, C.A.. No. 88-662-RRM (Report & Recommendation adopted 8/13/93) Rpt & Rec. at 13-14.

Further, Hopkins' claim that his federal constitutional rights were violated as a result of the alleged discovery violation was not fairly presented to the Delaware Supreme Court, and thus

the claim is unexhausted. A state petitioner seeking federal habeas relief must first exhaust remedies available in the state courts. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Rose v. Lundy*, 455 U.S. 509, 515 (1982); *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Alston v. Redman*, 34 F.3d 1237, 1241-42 (3d Cir. 1994). To satisfy the exhaustion requirement, the petitioner must demonstrate that he "fairly presented" his claim to the state's highest court, either on direct appeal or in a post conviction proceeding. *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir.1997) (citations omitted); *Thomas v. Carroll*, 424 F. Supp. 2d 738, 743 (D. Del. 2006). *See also Bailey v. Snyder*, 855 F. Supp. 1392, 1399 (D. Del. 1993) (noting that a petitioner "must show that he presented each claim to the Delaware Supreme Court"). A claim is "fairly presented" if the petitioner has presented the claim's factual and legal basis to the state courts in a manner that puts them on notice that a federal claim is being asserted. *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir.2004) (citing *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir.1999)). *See* 28 U.S.C. § 2254(b); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Landano v. Rafferty*, 897 F.2d 661, 670-71 (3d Cir. 1990); *Gibson v. Scheidemantel*, 805 F.2d 135, 139 (3d Cir. 1986).

On direct appeal, Hopkins' argument was that the State's expert witness should not have been allowed to testify regarding the meaning of the phrase "beat for six" because prosecutors had failed to specify in response to a discovery request that the witness would offer an opinion regarding drug lingo. *Hopkins v. State*, Del. Supr. Ct. No. 540, 2004, Op. Brf. at 23-31. Although the argument heading referred to a violation of state and federal rights to a fair trial, the focus of the argument was that the prosecutors had violated Superior Court Criminal Rule 16(a)(1)(E), which requires disclosure of the identity of any expert witnesses to be presented at trial and the substance of their opinions. *Id.* In considering the claim, the Delaware Supreme

10

Court headed its discussion of the claim "The State's alleged Superior Court Criminal Rule 16 discovery violation" and reviewed the claim for an abuse of discretion. *Hopkins*, 893 A.2d at 926-27. After finding that "the State did not violate its obligations under Rule 16," the state supreme court held that it "need not discuss Hopkins's conclusory claim that he was 'denied his state and federal constitutional rights to a fair trial . . . .'" *Id.* at 927 n.6. Hopkins' references to a federal claim appear only in his heading and the final paragraph of his argument. *See Hopkins v. State*, Del. Supr. Ct. No. 540, 2004, Op. Brf. at 23, 31. Hopkins cited several federal cases in reference to the appropriate sanction for a discovery violation, but Hopkins referred to no federal authority for his "fair trial" violation.    Such broad appeals to the right to a fair trial are insufficient to establish exhaustion. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996); *see also Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005); *Casey v. Moore*, 386 F.3d 896, 913 (9th Cir. 2004). "[E]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." *Johnson v. Rosemeyer,* 117 F.3d 104, 110 (3d Cir.1997). Hopkins later raised the same issue in the context of an ineffective assistance of counsel claim in his state postconviction motion. *See Hopkins*, 2007 WL 1242313 at *2. But in his postconviction appeal, Hopkins did not present the issue, and that claim was waived. Thus, Hopkins did not exhaust any federal claim related to the supposed discovery violation.

· Ordinarily, a failure to exhaust a claim results in dismissal of the habeas petition, *Rose v. Lundy, supra,* or a stay of the federal habeas proceedings to allow the prisoner to exhaust state court remedies (*Rhines v. Weber*, 544 U.S. 269 (2005)). If, however, there is no available state remedy, Hopkins is excused from the exhaustion requirement. *See Teague v. Lane*, 489 U.S. 288, 298 (1989); *Castille*, 489 U.S. at 351-52. Because Hopkins did not fairly present his federal claim on direct appeal or in his first postconviction action, the claim is procedurally defaulted

11

under Superior Court Criminal Rules 61(i)(2) and (3). *See, e.g., McLaughlin v. Carroll*, 270 F. Supp. 2d 490 (D. Del. 2003). Under Rule 61(i)(2), claims not raised in a prisoner's first postconviction motion are thereafter barred. Under Rule 61(i)(3), claims not raised in the proceedings leading up to the judgment of conviction are barred unless the petitioner establishes cause for and prejudice from his procedural default. *See generally McLaughlin*, 270 F. Supp. 2d 490. Hopkins' federal claim was not raised at trial, on direct appeal or in his postconviction proceedings.

Thus, because there is no available state remedy, Hopkins is excused from the exhaustion requirement. *See Teague*, 489 U.S. at 297-98; *Castille*, 489 U.S. at 351-52; *Clark v. Pennsylvania*, 892 F.2d 1142, 1146-47 (3d Cir. 1989); *Lawrie*, 9 F. Supp. 2d at 454; *Dawson*, 988 F. Supp. at 804. However, because Hopkins procedurally defaulted his claim in the state courts, federal habeas review is barred unless he establishes cause for the procedural default and actual prejudice. *Coleman*, 501 U.S. at 750-51; *Caswell*, 953 F.2d at 861-62; *McLaughlin*, 270 F. Supp. 2d at 513. Here, Hopkins asserts ineffective assistance of trial counsel in his petition (D.I. 1, Attachment A at 12), which can establish cause for a procedural default. *E.g., Werts v. Vaughn*, 228 F.3d 178, 193 (3d Cir. 2000); *Lines v. Larkin*, 208 F.3d 153, 166-67 & n.20 (3d Cir. 2000). Hopkins, however, did not make this particular ineffective assistance claim in his postconviction appeal (*see Hopkins v. State*, Del. Supr. Ct. No. 250, 2007, Amended Op. Brf.), and he thus failed to exhaust his ineffective assistance of counsel claim as well. *See Edwards v. Carpenter,* 529 U.S. 446, 452-53 (2000) (an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted); *Carrier*, 477 U.S. at 488-89 (an allegation of constitutionally ineffective assistance of counsel as cause for a procedural default in a state court must itself be independently exhausted). In turn, Hopkins'

failure to litigate the ineffective assistance claim in his postconviction appeal precludes any attempt by him to re-litigate the issue in the state courts. *See McLaughlin*, 270 F. Supp 2d at 511. Hopkins does not explain his failure to present in the postconviction appeal the claim of ineffective assistance of counsel, and thus this Court need not reach the question of whether he has shown any prejudice. *See Coleman*, 501 U.S. at 757; *Smith v. Murray*, 477 U.S. 527, 533 (1986); *McLaughlin*, 270 F. Supp. 2d at 513.

Thus, consideration of Hopkins' claim that the State's failure to inform defense counsel that Detective Wright would interpret the "beat for six" phrase on the videotape violated his Fifth Amendment right to a fair trial is precluded because Hopkins procedurally defaulted the claim in state court. In the absence of cause, this Court is not required to address the issue of prejudice. *See Smith v. Murray,* 477 U.S. 527, 533 (1986); *White v. Carroll*, 416 F. Supp. 2d 270, 282 (D. Del. 2006). Moreover, the miscarriage of justice exception does not apply because Hopkins has not presented any new evidence to establish his actual innocence. *See Hubbard v. Pinchak,* 378 F.3d 333, 339-40 (3d Cir. 2004) (holding that, in order to establish actual innocence sufficient to demonstrate a miscarriage of justice, a petitioner must assert "new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--- that was not presented at trial."). Thus, Hopkins' claim should be dismissed.

### Conclusion

Based upon the Superior Court docket sheet, it appears that the transcript of Hopkins' suppression hearing (Sept. 14, 2004), trial (Sept. 14-17 & 20, 2004), and sentencing (November 12, 2004) have been prepared. In the event that the Court directs the production of any transcript, respondents cannot state with specificity when such transcript would be available.

However, respondents reasonably anticipate that such production would take 90 days from the issuance of any such order by the Court.

For the foregoing reasons, the petition for a writ of habeas corpus should be dismissed without further proceedings.

/s/ Elizabeth R. McFarlan
Deputy Attorney General
Del. Bar. ID No. 3759
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
elizabeth.mcfarlan@state.de.us

Date: May 9, 2008

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

WILLIAM F. MANCHESTER,           :
                             :
      Plaintiff,    :
                             :
   v.                 :     Civil Action No. 88-662-RRM
                             :
WALTER W. REDMAN and CHARLES     :
M. OBERLY,                       :
                             :
     Defendants.      :


## MAGISTRATE'S REPORT AND RECOMMENDATION

---

William F. Manchester, <u>pro</u> <u>se</u>, plaintiff, Delaware Correctional Center, P.O. Box 500, Smyrna, Delaware 19977

Loren C. Meyers, Esquire, Deputy Attorney General, Department of Justice, 820 N. French Street, Wilmington, Delaware 19801, attorney for defendants

---

Dated:   June 21, 1993

Wilmington, Delaware


1

TROSTLE, U.S. Magistrate-Judge

## INTRODUCTION

Petitioner, William F. Manchester, filed this action for federal habeas relief on November 25, 1988 (D.I. 1, 10). For the reasons stated below, petitioner's application for habeas relief should be denied.

## FACTS AND PROCEEDINGS

In a joint trial, petitioner, John D. Michael and Steven G. Walls, were convicted of attempted first degree murder, first degree conspiracy and possession of a deadly weapon during the commission of a felony. Manchester and Michael were sentenced to life imprisonment with parole eligibility for attempted murder, five years imprisonment for conspiracy, and five years imprisonment for the weapons offense. At Walls' sentencing, the Superior Court, on the prosecution's motion, entered nolle prosequi on the original charges. Walls then plead guilty to first degree assault, second degree conspiracy, and weapons possession, and he was sentenced to a total of fifteen years imprisonment. On direct appeal to the Delaware Supreme Court, Manchester's convictions and sentence were affirmed. Manchester v. State, Nos. 134 & 160, 1986 (Del. Oct. 1, 1987).

Petitioner's convictions stem from the November 4, 1984 stabbing of Robert Cutrufello, in the parking lot of a New Castle County, Delaware, bar. On that evening, Cutrufello and Michelle Jones went bowling. After bowling one game, the two went to an adjacent lounge around 10:15 p.m. As Cutrufello sat at the bar, he

noticed Manchester and Michael also sitting at the bar. He had seen the two men there a week before and Michael appeared to be staring at him. Several months before, he had been approached by Manchester, but Cutrufello believed Manchester to be an undercover police officer and refused to talk to him. Tr.A-58-63. While in the bar, Manchester made a phone call. Tr.B-34, 181-82, 199; Tr.D-72.

Cutrufello and Jones left the bar at approximately 11:45 p.m. after having some drinks. When they reached the car, Cutrufello tossed the keys to Jones to open door on her side. At that point he saw Manchester and Michael approximately 10 to 12 feet away, and one of them asked if "Cut" was his nickname. Cutrufello responded, "yes" and asked the two what they wanted. One of them said, "somebody wants to talk to you." Jones then stated that she was leaving, but was told that she was not going anywhere. Cutrufello directed her to run. Manchester, standing in front of Cutrufello attacked, and Michael then jumped Cutrufello from behind. Cutrufello was stabbed several times in the chest and abdomen. He identified Manchester in a photo array as one of his assailants, and he identified Manchester and Michael in court as the men he had seen sitting in the lounge. Tr.A-61, 64-68, 86-87, 92-96; Tr.B-129-31; Tr.C-103-04.

During the attack, Jones ran toward the bar. As she approached the building, another man, whose face was covered by a bandanna grabbed her. He turned Jones towards the wall, instructing her to be quiet and not to look. She heard sounds of

3

a scuffle behind her and Cutrufello yelling, "Let her go." The man released her and Jones went into the bar.  Tr.B-30-38.

Several people responded to Jones' cries for help.  Two men tackled Manchester and Michael while two other men chased the man wearing the bandanna.  Both Manchester and Michael were seen holding knives by their captors, and one witness saw Manchester slash at Cutrufello's face with the knife.  Then Cutrufello mumbled, "Let them go" in a response to a question whether Manchester and Michael were his assailants, and the crowd released the two men.  The pair then entered a parked car in the parking lot and drove south on Concord Pike.  Tr.B-39-41, 145-49, 165-66; Tr.C-5-6, 23-30, 44-48, 59-60.

Jones and another patron remembered the license plate of the car driven by Manchester and Michael.  The police traced the license to Michael and the car was recovered in Landenberg, Pennsylvania, the town where Michael was living.  Tr.B-041-42; Tr.C-29-30, 124-26.  Two days after the attack, Jones told the police that she had learned that one of the assailants was Manchester.  Tr.B-70-71, 76-77; Tr.C-96, 183, 191-92.  Using that information, the police constructed photo arrays with the pictures of Manchester and Michael.  Cutrufello identified only Manchester as one of the assailants, having not seen who attacked him from behind.  However, he was positive that both Manchester and Michael were involved in the attack.  Jones identified both men as the assailants.

Patrons who had rushed outside after Jones' screams for

help identified Manchester and Michael in the photo arrays as being in the bar and as standing over Cutrufello's body. Tr.A-74; Tr.C-97-124. At trial, Cutrufello identified both Manchester and Michael as his assailants. Jones was also able to identify both at trial as the men in the parking lot before and after the attack, although she testified that she did not actually see the stabbing.

Manchester and Michael both admitted that they had been at the bar that night, but they claimed to have come upon Cutrufello after he had been attacked. Manchester said that he was waiting in a car for Michael, when he heard a ruckus. He left the car and came upon Michael and Cutrufello, who was face down, and saw another large person standing in the shadows. Petitioner testified that he found a blood covered opened knife on the ground near Cutrufello, while Michael recounted that he took a knife out of Cutrufello's hand. Manchester picked up the bloody knife, put it in his pocket and he and Michael were then knocked down by people who had rushed onto the scene. They were released after Cutrufello said, "Let them go." Manchester discarded the knife in a dumpster behind Bennigan's. The two then drove off in Michael's car. Manchester testified that he did not stab Cutrufello. Tr.D-39-42, 45-49, 65-66, 70-72, 76-80.

In July of 1988, Manchester applied for state habeas relief. The Superior Court dismissed the petition but ordered the case transferred to the criminal docket as a post-conviction motion. Manchester's appeal of that Order was dismissed by the state Supreme Court. <u>Manchester v. Redman</u>, No. 303, 1988 (Del.

Nov. 14, 1988).

Petitioner filed this application for federal habeas corpus relief under 28 U.S.C. §2254, followed by "amended petition for writ of habeas corpus". (D.I. 1, 10). In his original and amended applications for relief, petitioner raises the following issues:

(1)    Denial of his Sixth and Fourteenth Amendment Rights by the Delaware Supreme Court, who forced representation by ineffective counsel (who failed to file a brief on his non-frivolous appeal) or by not allowing petitioner to proceed pro se on appeal. According to petitioner, the proper resolution would have been to allow him to "supplement" his counsel's submissions on appeal (D.I. 1, Ground 2; D.I. 10, at 4-15);

(2)    The hearing on remand when petitioner waived counsel on appeal was constitutionally defective (D.I. 10, at 15-20);

(3)    Petitioner was not allowed to represent himself at trial (D.I. 10 at 32);

(4)    "The failure of the Prothonotary and deputy clerks of the Superior Court of New Castle County to file and docket petitioner's motions for discovery and severance, etc. . . . denied the petitioner court access and due process" (D.I. 10, at 34-35);

(5)    The disparity in sentencing as "clear proof that the State's actions from the inception of the prosecution were calculated to, and in fact, did provide preferential treatment for members of the Pagan Motorcycle Club at the expense of the petitioner's Fourteenth Amendment rights to due process and equal

protection under the law" (D.I. 10 at 33);

(6)  "The  intentional  suppression  of  specifically requested discovery material and then knowing and use of perjury by the State rendered the trial proceedings fundamentally unfair" (D.I. 1, Ground 1; D.I. 10 at 33);

(7)  "The failure to charge the jury with the proper lessor-included offenses of attempted murder in the first degree denied the petitioner of due process and the equal protection of the law" (D.I. 10 at 33);

(8)  "The photographic line-up was per se impermissibly suggestive in number, appearance, person (Pagans) and display tainted at the in-court identifications, and would not have been properly admitted if the trial court used the proper standard" (D.I. 1, Ground 3; D.I. 10 at 33);

(9)  The  evidence  was  insufficient  to  support  the convictions for attempted murder and conspiracy (D.I. 10 at 34);

(10) "The petitioner was denied a confrontation and meaningful cross-examination of the State's witnesses, as well as, the right to compulsory process as a result of the restriction on cross-examination by the trial judge, and the suppression of exculpatory and otherwise material evidenced by the State and defense counsel" (D.I. 10 at 34);

(11) "Superior    Court    Criminal    Rule    9    is unconstitutionally void for one of an impartial decision-maker in violation of the due process clause" (D.I. 10 at 35);

(12) "The conspiracy between the State, defense counsel

and the trial judge rendered the trial court proceedings fundamentally unfair" (D.I. 1. Ground 4; D.I. 10 at 35); and

(13) "The cumulative constitutional deprivation intentionally affected by the State and by defense counsel deprive petitioner of a fair trial and a meaningful appeal" (D.I. 10 at 35).

The Honorable Sue L. Robinson previously determined that petitioner had exhausted his state remedies with respect to these claims, as well as his other claims. D.I. 50 at 8-10. Therefore, since the issue of exhaustion has been litigated in this matter, the Court will not reexamine the issue again in this report. Consequently, as previously decided petitioner has met the exhaustion requirement. Smith v. Digmon, 434 U.S. 332 (1978).

## DISCUSSION

At the state level, petitioner repeatedly expressed a desire to represent himself. On November 25, 1986, the state supreme court, in response to petitioner's repeated wish to proceed pro se on appeal, remanded the case to the Superior Court to determine whether petitioner's waiver of appellant counsel was knowing, voluntary, and intelligent. After the hearing, the case was returned to the Delaware Supreme Court. On January 5, 1987, that court allowed Durstein to withdraw and petitioner to represent himself. At this point, Durstein had not filed an opening brief, having instead received various extensions of time. Petitioner claims his Sixth Amendment right to counsel was violated in two respects. First, petitioner contends that he was impermissibly

8

forced to choose between being represented by Durstein or proceeding pro se on appeal. He contends that he should have been allowed to file in addition to whatever brief Durstein would have filed, a supplemental brief. Secondly, petitioner claims that under Anders v. California, 386 U.S. 738 (1967), Durstein should have filed a brief before being allowed to withdraw and Durstein's failure to do so is evidence that Durstein provided ineffective assistance of counsel.

As a matter of law, the right to self representation and the right to counsel are mutually exclusive, and there is no constitutional right to "hybrid representation." Therefore, the state court could properly force petitioner to choose between representation by counsel and pro se status. United States v. Tarantino, 846 F.2d 1384, 1420-22 (D.C. Cir. 1988), cert. denied 488 U.S. 867 (1988)(and cases cited therein); Hall v. Dorsey, 534 F.Supp. 507, 508 (E.D.Pa. 1982) (and cases cited therein). The fact that the Delaware Supreme Court had previously permitted an appellant to file a brief as a supplement to that filed by counsel, does not establish the procedure as a constitutionally mandated process. Beck v. Washington, 369 U.S. 541 (1962). In fact, since the adoption of Rule 26(d)(iii) in 1987, the Delaware Supreme Court has not allowed defendants to file pro se supplemental briefs.

Additionally, petitioner's application of Anders to his situation, is misplaced. Anders, concerns only situations where counsel seeks to withdraw after his own examination of the record reveals no merit to the appeal. Anders, 386 U.S. at 744. In the

9

instant matter, counsel only withdrew upon petitioner's own request that he be discharged.    Thus, <u>Anders</u> is not applicable to petitioner's case.

The Delaware Supreme Court remanded petitioner's case to the Superior Court "for the purpose of conducting a hearing on petitioner's request to proceed <u>pro se</u>." At that hearing, Durstein was to be present "to answer any inquiry from the trial court concerning his past representation of the defendant." The Superior Court then conducted a hearing pursuant to that remand. Petitioner claims that the hearing was defective since he was not given adequate notice of it, the Superior Court judge should have recused himself since he was a defendant in a related civil rights suit brought by petitioner, he was not allowed to question Durstein or the prosecutor at the hearing, and his various motions filed in the superior and supreme courts were not resolved.    These claims, however, are without merit.

In carrying out the direction of an order from the supreme court, the Superior Court's jurisdiction is limited to the specific mandate of the appellate order. 5B C.J.S. <u>Appeal & Error</u>, §1965-66 (1958); <u>Hartford National Bank and Trust Company v. Tucker</u>, 487 A.2d 528, 530 (Conn. 1985); <u>Balducci v. Eberly</u>, 500 A.2d 1043, 1048 n.12 (Md. 1985).    Thus, since the intended purpose of the hearing was to determine whether petitioner had the requisite knowledge, awareness and intent to waive his right to counsel on appeal, the hearing did not have the broader scope to invite questioning as to any aspect of Durstein's performance or

the prosecutor's actions.  Petitioner's various complaints about notice and lack of opportunity to question Durstein and prosecutor in resolution of various motions he had filed are irrelevant. Moreover, it was not improper for the superior court judge to conduct the waiver hearing simply because Manchester named him as a defendant in a related civil rights action.  48A C.J.S. Judges §121 at 782, n.63 (1981) (citing cases).

     Next, petitioner alleges that he was not allowed to represent himself at trial.  However, the state record shows no clear and unequivocal waiver by petitioner of his right to counsel at the trial level.  On direct appeal, petitioner's claim was based on a letter in which he made four requests.  In that letter, petitioner requested that two outside private attorneys be appointed by the court in order to avoid a possible conflict of interest.  In addition, petitioner asked to proceed pro se.  As a result of his request to represent himself with a request for counsel, the state court could not conclude that Manchester had unequivocally decided to waive counsel.  In the absence of his unequivocal waiver, the state court was not required to honor petitioner's request to represent himself.  Tuitt v. Fair, 822 F.2d 166, 174-77 (1st Cir. 1987) cert. denied, 484 U.S. 945 (1987); Raulerson v. Wainright, 732 F.2d 803, 808 (11th Cir. 1984) cert. denied, 469 U.S. 966 (1984); United States v. Tompkins, 623 F.2d 824, 827-28 (2nd Cir. 1980).  If petitioner was seeking permission to proceed pro se as co-counsel, such a request could properly be denied since there is no constitutional right for defendant to be

11

appointed as co-counsel. <u>McKaskle v. Wiggins</u>, 465 U.S. 168, 181-85 (1984).

In addition, petitioner complains that the prothonotary did not file and docket his various <u>pro se</u> motions. Under the Sixth Amendment, a criminal defendant has a right to appeal <u>pro se</u> or by counsel. <u>Faretta v. California</u>, 422 U.S. 806 (1975). There is no right to "hybrid" representation. <u>Hall</u>, 534 F.Supp. at 508 (and cases cited therein). Delaware law parallels the federal right. Therefore, a defendant has the right to be heard by himself or by counsel, but not both. <u>In re Haskins</u>, Del. Supr., 551 A.2d 65, 66 (1988); <u>Hooks v. State</u>, Del.Supr., 416 A.2d 189, 198-99 (1980). Since petitioner was represented by counsel at his state trial, he had no right to file papers <u>pro se</u>. Thus, the prothonotary's alleged refusal to file or docket papers did not violate petitioner's right. <u>Hall</u>, 534 F.Supp. at 509.

Next, petitioner alleges that his sentence was disproportionate when compared to that of co-defendant Walls. He asserts that the reason for the disparity is because of the preferential treatment for members of the Pagan Motorcycle Club.

In a joint trial, Manchester, Michael, and Walls were convicted of possession of a deadly weapon during the commission of a felony. Manchester was sentenced to life imprisonment with parole eligibility for attempted murder, five years imprisonment for conspiracy, and five years imprisonment for the weapons offense. Michael received an identical sentence. However, at the sentencing of Walls, on the state's motion, the Superior Court

12

entered nolle prosequis on the original charges. As stated in the prosecution's motion, under Criminal Rule 48 for the post trial entry of nolle prosequis, the prosecution had learned of "facts...which convinced the state to a reasonable degree of probability that although [Walls] was aware of an intended and violent physical attack on the victim, by [Manchester and Michael], nonetheless [Walls] had no reason to believe that any deadly weapons were going to be used or that the attack would involve a life threatening potential." As a result, Walls entered guilty pleas to first degree assault, second degree conspiracy and weapon possession, for which he was sentenced to a total of fifteen years imprisonment.

Petitioner's claim that there was a disparity in the sentence does not allege either a due process or equal protection clause violation. Jones v. Superintendent, Rahway State Prison, 725 F.2d 40, 42-43 (3d Cir. 1984); Landry v. State of Alabama, 579 F.2d 353, 354 (5th Cir. 1978). The prosecutor's decision was not unreasonable in light of the information he learned at the trial that, Walls, though culpable, was less so than petitioner. Given this rationale, petitioner's conclusory statement that Walls' post trial plea and resulting sentence were the result of the prosecution's "preferential treatment for members of the Pagan Motorcycle Club", should be rejected. See, e.g., United States v. Heldt, 745 F.2d 1275, 1281 (9th Cir. 1984); United States v. Jones, 614 F.2d 80, 82 (5th Cir. 1980), cert. denied, 446 U.S. 945 (1980).

Petitioner next contends that the prosecution failed to

13

respond to his <u>pro</u> <u>se</u> discovery request.  Assuming <u>arguendo</u> that the criminal discovery rules were violated, the violation does not rise to the level of a constitutionally claim for which federal habeas relief is available.  <u>King v. Wainwright</u>, 489 F.Supp. 587, 593-94 (S.D.Fla. 1980); <u>Nasir v. Redman</u>, C.A. No. 8758, Report and Recommendation at 12 (D.Del. August 13, 1987) (adopting Report and Recommendation), <u>cert. prob. cause denied</u>, no. 87-3590 (3d Cir. October 28, 1987).

Next, petitioner claims that the prosecution's failure to disclose Cutrufello's guilty plea to a reduced charge of reckless driving, from driving under the influence of alcohol violated the disclosure duty under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).  In order to prevail on this claim, petitioner must show that the agreement made was related to an exchange for testimony.  <u>United States v. Elkins</u>, 885 F.2d 775, 787-88 (11th Cir. 1989), <u>cert. denied</u> 494 U.S. 1005 (1990); <u>United States v. Lacayo</u>, 758 F.2d 1559, 1562-63 (11th Cir. 1985), <u>cert. denied</u>, 474 U.S. 1019 (1985); <u>United States v. Baskes</u>, 649 F.2d 471, 476-77 (7th Cir. 1980), <u>cert. denied</u>, 450 U.S. 1000 (1981).  There is simply no evidence beyond petitioner's own assertions that Cutrufello's testimony was connected to the reckless driving plea.  In fact, given the already existing motivation for Cutrufello, as the victim of a stabbing, it is inconceivable that a plea agreement in a traffic related offense added any motivation for Cutrufello to testify in this case. Therefore, the prosecution was not constitutionally compelled under <u>Brady</u> to disclose the fact that Cutrufello had accepted an offered

14

plea agreement.

Moreover, even if that disclosure was required, petitioner is entitled to relief _only_ _if_ there is a reasonable likelihood that disclosure would have led to a different result. United States v. Bagley, 473 U.S. 667, 682 (1985). Given the nature of the plea agreement and the overwhelming testimony from witnesses who saw petitioner standing over Cutrufello and the fact that petitioner himself stated the same, nondisclosure was harmless in this case.

Petitioner alleges that contrary to testimony at trial, Cutrufello was in fact an informant and the prosecutor knowingly allowed Cutrufello to lie about his supposed status as an informant. His claim is based on the F.B.I.'s Freedom of Information Act response since the F.B.I. refused to release documents relating to Manchester, claiming the contents were exempt from disclosure. One reason for the exemption was that disclosure would reveal the identity of one or more confidential informants. Respondent argues that petitioner's claim of turning Cutrufello into an informant has not been exhausted in the state courts. Given earlier determination that petitioner had exhausted all claims in his petition and amended petition, the Court is bound to review petitioner's claim on the merits. However, upon review, this claim is without merit.

As stated, based on the F.B.I.'s Freedom of Information Act response, petitioner argues that Cutrufello was the informant mentioned in the F.B.I. documents. However, petitioner's

15

interpretation of the F.B.I's Freedom of Information Act response, is insufficient to conclude that Cutrufello was lying. See United States v. Gibbs, 662 F.2d 728, 730 (11th Cir. 1981); United States v. Brown, 634 F.2d 819, 827 (5th Cir. 1981).

More importantly, defense counsel's remarks at trial indicated that he had information that Cutrufello was, or had been, an informant. Tr.B-2-5. With this information, it then rested with the defense to impeach the testimony of Cutrufello.

> However, the fact that the alleged statement was known to petitioner and his counsel during the trial compelled petitioner to raise the issue then or not at all. When a criminal defendant, during his trial, has reason to believe that perjured testimony was employed by the prosecution, he must impeach the testimony at trial, and 'cannot have it both ways. He cannot withhold the evidence, gambling on an acquittal without it and then later, after the gamble fails, present such withheld evidence in a subsequent proceeding under 28 U.S.C. §2255.'

Evans v. United States, 408 F.2d 369, 370 (7th Cir. 1969) (quoting Green v. United States, 256 F.2d 483, 484 (1st Cir. 1958)) Cf. Decker v. United States, 378 F.2d 245, 251 (1967)(and cases cited therein). Petitioner cannot now complain Cutrufello lied about not being an informant when he had evidence to the contrary and did not present it at trial. Petitioner and counsel made a strategic decision not to challenge Cutrufello's remarks at trial, possibly because showing such evidence at trial would have provided the prosecution with compelling evidence of motive. The defense later argued to the jury that the prosecution did not have evidence of motive. Thus, the decision by the defense not to pursue this line

16

of questioning with Cutrufello forecloses such a claim on habeas review.

Additionally, petitioner has not shown that the prosecutor knew that Cutrufello had falsely denied being an informant. See Mooney v. Holohan, 294 U.S. 103 (1935)(the knowing use of perjured testimony violates due process). Before and during trial, the prosecutor recited that he had checked with local and state law enforcement officials, but not with federal authorities, about Cutrufello's activities. Cutrufello's answers about being an informant were consistent with the prosecutor's knowledge. There was no indication that the prosecutor knew otherwise. Thus, petitioner's claim must fail. Smith v. Thigpen, 689 F.Supp. 644, 650-52 (S.D.Miss. 1988), remanded on other grounds, 112 S.Ct. 1463 (1992).

Next, petitioner claims that because there was no instruction on a lessor included offense of attempted second degree murder, his trial was fundamentally unfair. Petitioner was charged with attempted first degree murder. Despite petitioner's testimony denying any involvement in causing Cutrufello's injuries, the trial judge without objection instructed the jury on both the charged offense and the lesser included offense of first degree assault. Due Process only requires, an instruction on a lessor included offense if the instruction is supported by the evidence and warranted under state law. Keeble v. Johnson, 412 U.S. 205, 214 (1973); Prather v. Rees, 822 F.2d 1418, 1423 (6th Cir. 1987); Bishop v. Mazurkiewicz, 634 F.2d 724, 725 (3d Cir. 1980), cert.

17

denied, 452 U.S. 911 (1981).  Under Delaware, the trial judge must give an instruction for a lessor included offense when "there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charge and convicting him of the included offense."  11 Del. C. §206(c).  Petitioner's assertion that attempted second degree murder was the appropriate instruction is without merit.  Under Delaware law, one cannot commit attempted second degree murder, since under the criminal code the state of mind required for murder in the second degree is recklessness or criminal negligence.  11 Del. C. §635.  An individual can only be prosecuted for an attempt of a crime when he intends to commit the crime alleged.  11 Del. C. §531.  Obviously, an individual cannot intend to act recklessly or with criminal negligence, thus he cannot be convicted of attempted second degree murder.  Further, petitioner denied committing any offense.  Therefore, he was not entitled to such an instruction.

Petitioner next claims that out-of-court identifications of him by several witnesses, including Cutrufello, were impermissibly suggestive.  Petitioner asserts that Cutrufello knew two of the men whose photos were in the array, thus making the array impermissibly suggestive.  The Due Process Clause is violated only when the photographic display results in a substantial likelihood of irreparable misidentification in light of the totality of the circumstances.  United States v. Hamilton, 792 F.2d 837, 840 (9th Cir. 1986)(citing United States v. Field, 625 F.2d 862, 865-66 (9th Cir. 1980).

18

In petitioner's case, the trial judge found that the photos themselves were all similar (Tr.A-53), a finding that is presumptively correct in this action. Wainwright v. Witt, 469 U.S. 412, 430-31 (1985). Further, given this Court's understanding of the identification procedure, it was not likely to result in misidentification. The police obtained a photo of Manchester from a relative and collected four photos of other white males with beards. The photos were shown to each witness, laid out in a single row and in the same order each time. The officer displaying the photos did not indicate which photo, if any, was to be selected by the witness and there was nothing on the photo that indicated the person to be selected. Furthermore, no identification procedure had been conducted before the witnesses were shown the photo array. In two instances, the witnesses were at the same house when the police conducted the displays, but these individuals viewed the array separately and did not appear to discuss their particular identification with each other. Tr.A-4-26, 68-75; Tr.B-44-46, 73-75, 149-51, 194-95, 231-33; Tr.C-32-33, 97-99, 103-04, 108-16, 120-21. In addition, the fact that Cutrufello may have known men in the array is immaterial. Hamilton, 792 F.2d at 840 (photo array proper despite defendant's claim that two of six photos were of the same person and two other photos nearly identical, leaving only two distinct photos). Finally and perhaps most importantly, it was highly unlikely that there could have been a misidentification, since not only did the prosecution's witnesses place petitioner at the scene of the crime, but petitioner himself

testified that he was at the scene at the relevant time.  Given this testimony, petitioner's theory that the photo array was impermissibly suggestive causing misidentification is without merit.

Petitioner next contends that the evidence was insufficient to convict him of attempted first degree murder and first degree conspiracy.  Petitioner is only entitled to relief if, a conviction was based on evidence so scanty that no rational trier of fact could find every element of the crime beyond a reasonable doubt when viewing evidence in a light most favorable to the prosecution.  Jackson v. Virginia, 443 U.S. 307 (1978); Paez v. O'Lone, 772 F.2d 1158, 1159 (3d Cir. 1985).  Under this standard, the evidence and the facts presented at trial as discussed previously were sufficient to support Manchester's conviction.

Petitioner does not dispute that he and Michael were at the scene of the crime.  Rather, he appears to question whether the jury should have believed the account given by Cutrufello and Jones or the account given by Michael and him.  The jury was obviously faced with the conflicting testimony.  However, the jury's task was to determine the credibility of the witnesses and resolve any conflicts.  The assessment of credibility is resolved in the prosecution's favor at this stage.  Jackson, 443 U.S. at 326. Petitioner has not offered any evidence that would alter the jury convictions.

Petitioner also challenges the adequacy of the evidence as to his intent.  Under Delaware law, as the jury was instructed,

to act intentionally, Manchester only needed to have a "conscious object or purpose to engage in a course of conduct planned to culminate in the commission of the crime of murder and it was in [his] hope that the circumstances were such that [his] conduct would, in fact, culminate in the commission of the crime." Tr.D-197; 11 Del. C. §§231(a), 531. The prosecution need not prove premeditation, deliberation or the existence of "malice". See Delaware Criminal Code Commentary 194 (1973) (first degree murder). Furthermore, the prosecution can establish that defendants intend to kill the victim through circumstantial evidence. 11 Del. C. §307; Commentary at 194. Circumstances clearly show an intent by Manchester to engage in conduct planned to intentionally cause the death of Cutrufello, as evidenced by the repeated stabbing to the victim's chest and abdomen. Manchester was seen holding a knife. Cutrufello identified Manchester as one of the men who stabbed him. Such evidence was sufficient to allow a jury to conclude that petitioner intended to kill Cutrufello.

As to the conspiracy count, the description given by Cutrufello and Jones of the attack shows an agreement between Manchester and Michael to attack Cutrufello. According to Cutrufello, the two men approached him simultaneously, Michael from the rear and Manchester from the front. When Jones tried to flee, she was held by Walls. The conduct of Manchester, holding a knife and using it to stab Cutrufello, shows an intent to promote or facilitate the offense. The overt act alleged to have been committed was the attempted murder of Cutrufello, and the

21

conviction of both Manchester and Michael for first degree murder satisfies the overt act requirement.     See 11 Del. C. §512; Commentary at 143.     In addition, Manchester can be convicted of first degree conspiracy despite Walls' subsequent plea to a count of second degree conspiracy.     Commentary at 149-50.

Next, petitioner contends that his right to cross-examination was improperly restricted when the trial judge refused to order Cutrufello to answer certain questions.     Cutrufello had refused to answer a question from Michael's counsel concerning the identity of Pagan Motorcycle Club members that he had spoken to about the case.     At side-bar, the prosecutor suggested that Cutrufello would be unwilling to discuss and identify members of the Pagan club, because of fear of his safety.     Tr. A-125. Petitioner's counsel joined in an objection by Walls' counsel to the ruling on this line of questioning and indicated that he would inquire into the discussions that Cutrufello had with others regarding his assailants.     The trial judge stated there was "no problem."  Tr. A-128.  While the trial judge refused to compel the witness to identify the club members with whom he had spoken, such a decision was not prejudicial.  The jury was aware of Cutrufello's discussions with members of the Pagans, and also observed his reluctance to identify those members.  It was properly left to the jury to draw any inferences that could be derived from Cutrufello's testimony.  Furthermore, Michael's attorney attacked Cutrufello's credibility, based on his refusal to identify the persons with whom he had spoken before trial. Tr. D-171-72.     Therefore, the actual

22

identification would do little to bolster the defense that Cutrufello was covering up for some member of the Pagan Motorcycle Club. Thus, any restriction in this regard was harmless.

Petitioner also claims that the trial court's refusal to grant a continuance to permit Manchester to subpoena John Dorning and reopen his case violated his constitutional rights. Dorning would have testified that he was a patron in the bar, and when he tackled Manchester in the parking lot, he did not see any weapons. The trial judge denied this late hour request, on the bases that Dorning's identity had been known to defense counsel for months, his name and address had been on the state's subpoena list, and his testimony was cumulative. In order for this refusal to amount to a constitutional violation, petitioner must show that the trial judge abused his discretion and the decision to deny a continuance made the trial fundamentally unfair. Conner v. Bowen, 842 F.2d 279, 283 (11th Cir. 1988), cert. denied, 488 U.S. 840 (1988)(citing Hicks v. Wainwright, 633 F.2d 1146, 1148 (5th Cir. 1981).

The determination by the trial judge that the defense could have contacted Dorning sooner was reasonable in light of the amount of time Dorning was on the witness list, and the length of time for investigation between the incident and trial. There is no showing that the trial judge abused his discretion in allowing the trial to continue. More importantly, at best the testimony would have only been cumulative, since defense counsel indicated that he would be the third person who did not see any weapon held by Manchester. Tr. D-104. Thus, the decision not to grant the

23

continuance was reasonable. Further, the proffered testimony would have contradicted that of Manchester who testified that he had possession of a knife found near Cutrufello, when tackled by several tavern patrons. See United States v. Reed, 476 F.2d 1145, 1147, n.1 (D.C. Cir. 1973)(no continuance required when "the testimony of such a witness would have been cumulative at best, and at worst, contradictory to that given by appellant").

Petitioner also contends that his arrest was illegal, since he was not arrested upon a warrant issued by a magistrate, but upon a warrant issued under Superior Court Criminal Rule 9(a)(2) at the request of a deputy attorney general. The state court record indicates that petitioner was indicted on December 18, 1984, and a Rule 9 warrant was issued the next day. This Court has previously determined that there is no federal issue raised by the warrant procedure of Rule 9(a). Santiago v. Redman, C.A. No. 86-332-JJF (Report and Recommendation adopted 11/6/86) cert. prob. cause denied, No. 85-5809 (3d Cir. Jan. 30, 1987). Therefore, this claim is without merit.

Next, petitioner claims a conspiracy among the prosecutor, defense counsel and the trial judge rendered the trial fundamentally unfair. However, petitioner has only made conclusory allegations in this regard and has not shown any evidence of a conspiracy in his case. Clearly, petitioner cannot be granted federal habeas relief simply on his disjointed theory of a conspiracy.

Petitioner also claims that "[t]he cumulative

constitutional deprivations intentionally effected by the State and
by defense counsel deprived [him] of a fair trial and meaningful
appeal." D.I. 10, at 35, Count XVII.   Petitioner can not obtain
relief by  adding this general claim, when the underlying claims
have been shown individually to be without merit.   See Mullen v.
Blackburn, 808 F.2d 1143, 1147 (5th Cir. 1987)(twenty times zero
equals zero).   Therefore, this assertion must also fail.

        Finally, petitioner's argument that respondents are
collaterally estopped from disputing any of the facts established
in Manchester v. Flynn, C.A. No. 85-552-MMS D.Del. (Report and
Recommendation dated May 3, 1988 adopted June 6, 1988) is without
merit.  Generally, the use of collateral estoppel is not applicable
in federal habeas litigation. Cf. Burnside v. White, 760 F.2d 217,
219 (8th Cir. 1985)(and cases cited therein); Thomas v. Dietz, 518
F.Supp.  794,  799  (D.N.J.  1981)(and  cases  cited  therein).
Notwithstanding the general principle, petitioner's attempted use
of offensive collateral estoppel is preposterous.     Petitioner
argues that since the defendants in Flynn did not contest every
allegation,  respondents  should  be  collaterally  estopped  from
disputing any of the facts which petitioner claims were established
in that case.  First, the Flynn case was dismissed pursuant to 28
U.S.C. §1915(d), with the finding that the Complaint was patently
frivolous.  Thus, no factual findings were made.  Further, the fact
that defendants were dismissed under absolute immunity cannot act
as an admission to certain facts or the merits of petitioner's
action, otherwise defendants would effectively be forced to argue

25

the entire case under a 1915(d) disposition, despite the fact that the case was deemed frivolous by the Court. Such a practice would amount to a tremendous waste of time and resources. Therefore, petitioner's attempted use of collateral estoppel to establish any "admissions" or "findings" in this litigation is misplaced.

For the foregoing reasons, petitioner's application for federal habeas relief should be denied.

The appropriate Order consistent with this Report and Recommendation shall follow.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

Aug 16  7 49 AM '93

CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

WILLIAM F. MANCHESTER )
)
Petitioner, )
)
v.        )        Civil Action No. 88-662-RRM
)
)
WALTER W. REDMAN. Warden. )
Delaware Correctional Center, )
and CHARLES M. OBERLY, III, )
Attorney General of the )
State of Delaware, )
)
Respondents. )

## ORDER

On June 21, 1993, the Magistrate Judge issued a Report and Recommendation, recommending that the plaintiff's petition for a writ of habeas corpus be denied.

The Court has received and reviewed the Petitioner's June 29, 1993, Objections to the Report and Recommendation and has noted that the Petitioner contends (among other things) that the Magistrate Judge erred in failing to allow him discovery and in failing to hold an evidentiary hearing on his claims.

Pursuant to 28 U.S.C. § 636 the Court and has conducted an independent de novo review of the record and the Magistrate's Report.

The Court accepts and adopts the Magistrate Judge's Report and Recommendation.

Now, therefore, IT IS ORDERED as follows:

1. The Magistrate's Report and Recommendation is accepted and adopted by the Court.

2. The application for a writ of habeas corpus is hereby denied and the petitions is dismissed.

3. No probably cause exists for an appeal.

4. The Clerk shall mail a copy of this Order to the petitioner and Loren C. Meyers, Esq., Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.

August 13, 1993

_____
United States District Judge



Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 534877 (D.Del.)
**(Cite as: Not Reported in F.Supp., 1996 WL 534877)**

Kennedy v. Richard Kearney
D.Del.,1996.
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
John B. KENNEDY, Jr., Petitioner,
v.
Richard KEARNEY, Warden, Sussex Correctional
Institution and M. Jane Brady, Attorney General of
the State of Delaware, Respondents.
**Civ. A. No. 95-613-SLR.**

Sept. 11, 1996.

John B. Kennedy, Jr., petitioner, *pro se.*
Timothy J. Donovan, Jr., Esquire, Deputy Attorney
General, Delaware Department of Justice, Wilmington, Delaware, attorney for respondents.

MEMORANDUM OPINION

SUE L. ROBINSON, District Judge.

I. INTRODUCTION

**\*1** On January 9, 1992, petitioner was sentenced to a twenty year term of imprisonment after pleading guilty to one count of first degree unlawful sexual intercourse. In his application for federal habeas corpus relief, presently pending before this court, he claims that his plea was not intelligently and voluntarily made and that the assistance he received from counsel was constitutionally deficient. Respondents have filed their answer, claiming that petitioner's claims are barred by his unexcused procedural default in presenting his claims to the state courts. For the reasons discussed below, the court will deny the requested relief and dismiss the petition.

II. BACKGROUND

In May 1991, a grand jury indicted petitioner on nine separate felony counts related to the sexual molestation of petitioner's daughter over a period of three years. (D.I. 3 at Ex. C) Petitioner appeared in Superior Court on January 9, 1992, for the purpose of pleading guilty to one of the counts of the indictment. In exchange for petitioner's guilty plea, the State agreed to dismiss the other felony counts as well as charges of lewdness, indecent exposure, assault, and endangering the welfare of a child which were pending against petitioner in Family Court. (D.I. 3 at Ex. A3)

Before the plea colloquy began, petitioner's counsel notified the court that, due to petitioner's illiteracy, counsel had filled out the relevant forms for petitioner and had explained them to him. (D.I. 3 at Ex. A3-A4) In response to the court's questions, petitioner indicated that he wished to enter a guilty plea, that he understood the consequences of waiving a jury trial, and that he was aware of the range of penalties he could receive. (D.I. 3 at Ex. A4-A7) Petitioner stated, regarding his attorney, "He explained everything to me, went over everything.... He read everything over with me and my wife, went over everything real good, so I understand what I was doing." (D.I. 3 at Ex. A5-A6) Based on petitioner's responses, the court stated its finding that petitioner's plea was "knowingly, intelligently and voluntarily made." (D.I. 3 at Ex. A10) The court sentenced petitioner to a twenty-year term of incarceration, fifteen of which were to be mandatory. (D.I. 3 at Ex. A13)

In November 1994, petitioner filed a Rule 61 postconviction motion, in which he claimed that his representation by counsel had been deficient, that his guilty plea was defective, and that the warrant for his arrest had been based on false information. (D.I. 3 at Ex. D) The Superior Court denied the motion on the merits. (D.I. 3 at Ex. E) Petitioner did not appeal.

Petitioner filed a second Rule 61 motion in Superior Court on January 17, 1995. (D.I. 3 at Ex. D) In that motion, petitioner restated the grounds he had

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 534877 (D.Del.)
(Cite as: Not Reported in F.Supp., 1996 WL 534877)

raised in his first motion for postconviction relief. The court denied the motion on procedural grounds, pursuant to Rule 61(i)(4), which provides:

Any ground for relief that was formerly adjudicated, whether in the proceeding leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, is thereafter barred, unless reconsideration of the claim is warranted in the interest of justice.

**\*2** Because each of petitioner's claims had been adjudicated in his previous Rule 61 motion, the court denied the second motion. (D.I. 3 at Ex. E) Petitioner appealed, and the Delaware Supreme Court affirmed. *Kennedy v. State,* No. 39, 1995 (Del. July 25, 1995).

III. DISCUSSION

A. Exhaustion Requirement

Before the court can review petitioner's claims, the court must ascertain whether petitioner has exhausted all available state remedies. 28 U.S.C. § 2254(b). In making this determination, the court should inquire as to whether there is an "absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." 28 U.S.C. § 2254(b). To exhaust state remedies, a petitioner must have raised in the state courts the factual and legal premises of the claims for relief he asserts in the federal proceeding. *Gibson v. Scheidemantel,* 805 F.2d 135, 138 (3d Cir.1986).

"It is not enough that the petitioner presents to the state court the facts upon which a federal claim is based." The claim must be substantially equivalent to that litigated in the state court. Both the legal theory and the facts supporting a federal claim must have been submitted to the state court.

*O'Halloran v. Ryan,* 835 F.2d 506, 508 (3d Cir.1987) (citations omitted).

In the petition presently before the court, plaintiff has presented two grounds for relief: 1) ineffective assistance of counsel; and 2) a defective guilty plea. Petitioner has previously raised precisely the same claims before the state courts. His state remedies, therefore, are exhausted.

B. Procedural Default

The Delaware Supreme Court did not have an opportunity to rule on the merits of petitioner's claims because he failed to appeal the Superior Court's denial of his first postconviction motion. Petitioner's second postconviction motion was denied on procedural grounds. When petitioner appealed the denial of the second motion, the Delaware Supreme Court was barred from reaching the merits by Rule 61(i)(4).

Allowing applicants for federal habeas corpus relief to proceed in federal court where, as here, their own default is responsible for the absence of available state remedies would undermine the principles of comity and federalism that underlie the exhaustion requirement. *Coleman v. Thompson,* 501 U.S. 722 (1991). The United States Supreme Court has held that a state court ruling resting on an independent and adequate state procedural ground will bar federal review absent a showing of cause for and prejudice from the default. *Wainwright v. Sykes,* 433 U.S. 72, 81-82 (1977). The state courts' application of Rule 61(i)'s procedural default provision is a "plain statement" under *Harris v. Reed,* 489 U.S. 255 (1989), that the state court decisions rest on independent state grounds. Rule 61(i)(4) and similar rules in other states have also been held adequate to bar federal review under *Wainwright. See Bond v. Fulcomer,* 864 F.2d 306 (3d Cir.1989); *Beatty v. Patton,* 700 F.2d 110, 112-13 (3d Cir.1983); *Woodlin v. Snyder,* C.A. No. 95-138-JJF (D.Del. June 16, 1995).

**\*3** Because the state courts based their denial of petitioner's postconviction motion on an independent and adequate state procedural ground, this court

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 534877 (D.Del.)
(Cite as: Not Reported in F.Supp., 1996 WL 534877)

may not consider the merits of petitioner's ineffective assistance of counsel claim unless he can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims[ ] will result in the fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). The Supreme Court has held that " 'cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him...." *Id.* at 753,*citing Murray v. Carrier,* 477 U.S. 478, 488 (1986) (emphasis in original).

Petitioner seeks to explain his failure to appeal the denial of his first postconviction motion by stating that the trial court refused to supply him with a free transcript "to verify facts." (D.I. 2) As a result, petitioner contends, the Superior Court dismissed his motion in a summary fashion without benefit of the record of petitioner's plea. Petitioner does not explain why the lack of a transcript, while not deterring him from filing a Rule 61 motion in Superior Court, would prevent him from appealing the denial of that motion. As respondents point out, if petitioner believed that the decision to deny him the transcript was erroneous, or that the lack of a transcript caused the wrongful dismissal of his postconviction motion, he had all the more reason to file an appeal. Petitioner's explanation, therefore, does not constitute cause. Because petitioner has failed to show cause for his default, it is not necessary for this court to address the issue of prejudice.

Petitioner also contends that the state courts should have excused his procedural default "in the interest of justice," and that their failure to do so constitutes a "substantial miscarriage of justice." (D.I. 10) Where a petitioner has defaulted his state remedies and has not demonstrated cause and prejudice, a federal court may entertain a petition for habeas corpus only if the petitioner makes a showing of "actual innocence." *Sawyer v. Whitley,* 112 S.Ct. 2514, 2519 (1992); *Murray,* 477 U.S. at 496. Petitioner has made no claim that he is actually inno-

cent, and has articulated no facts that would support such a claim. His procedural default, therefore, is not excused.

IV. CONCLUSION

For the reasons set forth above, the court will dismiss the application for habeas corpus relief and deny the writ of habeas corpus. An appropriate order will be entered.

D.Del.,1996.
Kennedy v. Richard Kearney
Not Reported in F.Supp., 1996 WL 534877 (D.Del.)

END OF DOCUMENT

## CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2008, I electronically filed an answer to the petitioner's habeas petition with the Clerk of Court using CM/ECF. I also hereby certify that on May 9, 2008, I have mailed by United States Service, two copies of the same document to the following non-registered participant:

Artel Hopkins
SBI No. 254263
Sussex Correctional Institution
P.O. Box 500
Georgetown, DE 19947

/s/Elizabeth R. McFarlan
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
Del. Bar. ID No. 3759
elizabeth.mcfarlan@state.de.us