IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARTEL HOPKINS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civ. No. 08-06-SLR |
| | ) |
| MICHAEL DELOY, | ) |
| Warden, and ATTORNEY | ) |
| GENERAL OF THE STATE | ) |
| OF DELAWARE | ) |
| | ) |
| Respondents. | ) |

Artel Hopkins. Pro se petitioner.

Elizabeth R. McFarlan, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for respondents.

**MEMORANDUM OPINION**

February 18, 2009
Wilmington, Delaware

**ROBINSON, District Judge**

## I. INTRODUCTION

Presently before the court is petitioner Artel Hopkins' ("petitioner") application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.I. 1) Petitioner is a Delaware inmate in custody at the Sussex Correctional Institution in Georgetown, Delaware. For the reasons that follow, the court will dismiss his application.

## II. FACTUAL AND PROCEDURAL BACKGROUND

As recounted by the Delaware Supreme Court in *Hopkins v. State*, 893 A.2d 922, 924-25 (Del. 2006), the facts leading to petitioner's arrest and conviction are as follows:

> In February 2000, police arrested Pedro Marte for cocaine trafficking at the Best Western Hotel in Seaford, Delaware. Marte pleaded guilty to trafficking in cocaine and was sent to the Sussex Correctional Institution in September 2000. While Marte was incarcerated, he met Raymond Bacon. Marte told Bacon that he was a "kingpin" with access to "a lot of drugs." The two also discussed the possibility of future drug transactions. On December 11, 2003, after serving thirty-nine months, Marte was released from prison.
>
> Less than two months after his release from prison, Marte arranged the delivery of two kilograms of cocaine in Delaware. Detective Dan Wright, a member of the Delaware State Police Special Investigation Unit ["DSP"], initiated an investigation of Marte. On January 30, 2004, Wright arrested Marte for possession of the two kilograms of cocaine. Marte agreed to assist the DSP in their cocaine trafficking investigations in the hope of a favorable plea and sentencing recommendation. Marte informed Wright that he knew two people in Delaware who were activiely seeking to buy large quantities of cocaine. One was Raymond Bacon. The DSP decided to conduct a "reverse" sting operation using Marte and cocaine provided by the police to set up a drug deal with Bacon. To set the operation in motion, Wright instructed Marte to contact Bacon.
>
> On February 2, 2004, while Wright monitored the conversation, Marte placed a call to Bacon. Marte asked Bacon if he or anybody he knew might want to buy drugs. Bacon responded that his friend, [petitioner] was interested. [Petitioner] . . . understood the conversation because he was with Bacon at the time Bacon spoke with Marte. Moreover, Bacon related portions of the conversation to petitioner during the course of the telephone call. The parties agreed that Marte would sell Bacon and [petitioner] two kilograms of cocaine for $47,000 with the understanding that [petitioner] would provide the money. Marte

informed Bacon that he would travel to Seaford the next day and call Bacon when he arrived. Bacon, in turn, informed [petitioner] that Marte was coming down the next day. Marte and Bacon also discussed getting a hotel room to carry out the transaction. Bacon seemed to like the idea of getting a hotel room because there they would be able to "cook" the cocaine to test its quality.

On February 3, 2004, the DSP rented two adjoining hotel rooms at the Best Western Hotel in Seaford, Delaware. The DSP set up video and audio surveillance of Room 307. They then picked Marte up from prison and escorted him to the hotel room. Once there, Marte placed a telephone call to Bacon, who was riding in a car with [petitioner] at the time, and told Bacon to meet him at the Best Western. After the phone call, [petitioner] turned the car around and went south to Georgetown to get the $47,000. [Petitioner] went into a house on a back road and came out with a black bag containing the money. [Petitioner] and Bacon then drove to the Best Western.

When they arrived at the hotel, Bacon called Marte and asked Marte for his room number. Bacon then went to Room 307 while [petitioner] remained in the vehicle in the parking lot. After entering the room, Bacon called [petitioner] to tell him the room number. Either Bacon or [petitioner] asked if there was a stove in the room. After finding out that there was not, [petitioner] left the Best Western and drove to Wal-Mart and purchased a hot plate. Shortly thereafter, [petitioner] returned to the Best Western and joined Bacon and Marte in Room 307. [Petitioner] entered Room 307 with a blue Wal-Mart bag and the black bag he picked up from the house in Georgetown. [Petitioner] also brought a digital scale, some baking soda he bought at another store, and a bag of rubber bands. After [petitioner] entered the room he placed the black bag on the bed. He opened it, grabbed a grocery bag that was inside the black bag and opened the grocery bag. The grocery bag contained the $47,000. Marte flipped through the stacks of money to make sure that there were no single dollars in the middle. Satisfied that there was actually $47,000 in the bag, Marte called a DSP detective who brought the drugs into the room and handed them to Marte. [Petitioner] indicated that he needed to test the cocaine because he had previously been "beat for six" (lost a large amount of money when he purchased drugs that were "not good."). While preparing to cook the cocaine, [petitioner] reached into the bag with the cocaine while Bacon was plugging in the hot plate. At that point, the DSP came into the room and arrested everyone present.

In September 2004, a Delaware Superior Court found petitioner guilty of trafficking in cocaine (100 grams or greater), possession with intent to deliver cocaine, maintaining a building for keeping controlled substances, second degree conspiracy, and possession of drug paraphernalia. *Id.* In November 2004, the Superior Court

2

sentenced petitioner to a total of forty-one years at Level V incarceration, suspended after eighteen years for decreasing levels of supervision. *See Hopkins v. State*, 2007 WL 3385912, at *1 (Del. Nov. 2004). The Delaware Supreme Court affirmed petitioner's convictions and sentence on appeal. *Hopkins*, 893 A.2d at 934.

In January 2007, acting pro se, petitioner filed a motion for post-conviction relief under Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). The Superior Court denied the motion, and the Delaware Supreme Court affirmed that judgment. *See In re Hopkins*, 2007 WL 1242313 (Del. Super. Ct. Apr. 27, 2007); *Hopkins v. State*, 940 A.2d 945 (Table), 2007 WL 3385912, at *2 (Del. Nov. 15, 2007). Petitioner filed his habeas application in December 2007, and the State filed its answer in May 2008. (D.I. 1; D.I. 14)

## III. GOVERNING LEGAL PRINCIPLES

### A. Exhaustion and Procedural Default

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)(internal citations and quotation marks omitted). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA also imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given

3

effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see Woodford,* 538 U.S. at 206.

One prerequisite to federal habeas review is that a petitioner must exhaust all remedies available in the state courts. *See* 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. *Werts v. Vaughn,* 228 F.3d 178, 192 (3d Cir. 2000).

A petitioner satisfies the exhaustion requirement by "fairly presenting" the substance of the federal habeas claims to the state's highest court, either on direct appeal or in a post-conviction proceeding, and in a procedural manner permitting the state courts to consider them on the merits. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997). However, a federal district court must excuse a petitioner's failure to exhaust state remedies if state procedural rules bar the petitioner from returning to state courts to obtain further relief for his claims; in other words, the claims are deemed exhausted because there is an "absence of an available State corrective process." 28 U.S.C. 2254(b); *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *Wenger v. Frank,* 266 F.3d 218, 223 (3d Cir. 2001); *see Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although deemed exhausted, such claims are nonetheless procedurally defaulted, and a federal court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if

the court does not review the claims. *Lines,* 208 F.3d at 160; *Caswell v. Ryan,* 953 F.2d 853, 861-62 (3d Cir. 1992); *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman v. Thompson,* 501 U.S. 722, 750-51 (1991).

To demonstrate cause for a procedural default, the petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, the petitioner must show that the errors during his trial worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494. Alternatively, if the petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Id.* at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 623 (1998); *Murray,* 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - - that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak,* 378 F.3d 333, 339-40 (3d Cir. 2004).

### B. Standard of review

If, however, the state's highest court adjudicated a federal habeas claim on the merits, then a federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). A state court has adjudicated a claim on the merits for the purposes of § 2254(d) if the state court "decision finally resolv[es] the parties' claims, with res judicata effect, [and] is based on the substance of the claim advanced, rather than on a procedural, or other ground." *Rompilla v. Horn*, 355 F.3d 233, 247 (3d Cir. 2004)(internal citations omitted), *rev'd on other grounds by Rompilla v. Beard*, 125 S.Ct. 2456 (2005).

Pursuant to § 2254(d), federal habeas relief may only be granted when the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).

AEDPA also requires a federal court to presume that a state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1). A petitioner can only rebut this presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). This presumption of correctness applies to both explicit and implicit findings of fact.

*Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

## IV. DISCUSSION

Petitioner's timely filed application presents the following three claims for relief: (1) the trial court violated the constitutional doctrine of separation of powers by permitting the prosecutor to inform the jury of the trial court's involvement in petitioner's prosecution, and defense counsel provided ineffective assistance by failing to file a motion to dismiss the indictment on this ground; (2) the prosecutor improperly commented on petitioner's right not to testify, thereby violating petitioner's Fifth Amendment rights; and (3) the admission into evidence of expert testimony interpreting the drug lingo "beat for six" violated Delaware's discovery rules and denied petitioner a fair trial.

### A. Claim one: separation of powers

According to petitioner, the trial court violated the separation of powers doctrine of the United States Constitution by granting the State's motion for release of evidence (cocaine) from an unrelated case, because the police used the cocaine from the unrelated case to set up the reverse sting operation that led to petitioner's arrest. However, as a general rule, the separation of powers between the branches of state government does not implicate federal constitutional issues, only issues of state law. *See Whalen v. United States*, 445 U.S. 684, 689 n.4 (1980)(explaining that the "doctrine of separation of powers embodied in the Federal Constitution is not mandatory on the states."); *see also Colorado General Assembly v. Salazar,* 541 U.S. 1093, 1095 (2004)(dissent). In turn, it is well-settled that a federal court cannot grant a

writ of habeas corpus on the basis of a perceived error of state law. *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Accordingly, the court concludes that petitioner's "separation of powers" argument fails to present an issue cognizable on federal habeas review.[1]

Petitioner also contends that counsel provided ineffective assistance by failing to argue the separation of powers issue during his trial or on direct appeal. Petitioner presented this claim to the Delaware Supreme Court on post-conviction appeal, and the Delaware Supreme Court denied the claim as meritless. Consequently, habeas relief can only be granted if the Delaware Supreme Court's decision is either contrary to, or an unreasonable application of, clearly established Federal law.

The "clearly established [f]ederal law" which governs ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that: (1) counsel's performance fell below an objective standard of reasonableness measured under prevailing professional norms; and (2) counsel's deficient performance actually prejudiced the petitioner's case. *Strickland*, 466 U.S. at 690. In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260; *Dooley*, 816 F.2d at 891-92. Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong

---

[1] To the extent petitioner contends that the trial court violated the "separation of powers" doctrine articulated in State of Delaware's Constitution, that claim is an issue of state law and, therefore, also fails to present an issue cognizable on federal habeas review. *See Pulley v. Harris*, 465 U.S. 37, 41 (1984).

presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Here, the Delaware Supreme Court correctly identified the *Strickland* standard and analyzed the instant ineffective assistance of counsel claim within its framework. Therefore, the Delaware Supreme Court's denial of petitioner's ineffective assistance of counsel claim was not contrary to clearly established Supreme Court precedent. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

In addition, the court concludes that the Delaware Supreme Court's analysis of the claim constituted a reasonable application of the *Strickland* standard. On post-conviction appeal, petitioner argued that the trial court's actions violated the separation of powers doctrine contained in both the United States and Delaware's constitutions. The Delaware Supreme Court determined that the separation of powers doctrine was not implicated in petitioner's case because "[t]here is no evidence in this case that one branch of government attempted to exercise the powers properly belonging to another branch." *Hopkins*, 2007 WL 3385912, at *1. The State Supreme Court then denied petitioner's ineffective assistance of counsel claim because petitioner did not demonstrate how he was prejudiced by counsel's failure to raise this issue. *Id*.

The Delaware Supreme Court's decision does not identify whether the claim was denied as a matter of federal constitutional law, Delaware constitutional law, or both. To the extent the Delaware Supreme Court denied petitioner's separation of powers

9

argument as a matter of Delaware constitutional law, the court is bound to accept the Delaware Supreme Court's holding that the argument was meritless. *See Bradshaw v. Richey*, 546 U.S. 74, 126 S.Ct. 602, 604 (2005)(citing *Estelle v. McGuire*, 502 U.S. 62, 67-8 (1991). In turn, to the extent the Delaware Supreme Court denied petitioner's argument as a matter of federal constitutional law, the State Supreme Court's decision was objectively reasonable because the federal separation of powers doctrine does not apply to the states. Therefore, petitioner cannot demonstrate that he was prejudiced by counsel's failure to raise either of these meritless arguments to the Delaware courts. Accordingly, the court will deny the claim for failing to satisfy the *Strickland* standard.

### B. Claim two: right to testify

Petitioner did not testify at trial. While summing up to the jury, the prosecutor stated, "I don't know if you would agree or not that you may have more faith in a process when poker is played with the cards up and they are all on the table than when some of them are kept concealed underneath the table and only a few are placed up for you to view." (D.I. 16, App. to Appellant's Op. Br. in *Hopkins v. State*, No.540,2004, at E-56-57) In claim two, petitioner contends that the prosecutor's statement constituted an indirect comment on petitioner's decision not to testify, thereby violating his Fifth Amendment rights. More specifically, petitioner asserts that "the prosecutor clearly meant that an inference of [petitioner's] guilt should be drawn through his failure to lay his cards out on the table or testify." (D.I. 1, at p. 7)

Petitioner presented this claim to the Superior Court in his Rule 61 motion. The Superior Court denied the argument as procedurally barred by Delaware Superior Court

10

Criminal Rule 61(i)(3) because petitioner did not assert the claim in the proceedings leading to the judgment of conviction. On post-conviction appeal, the Delaware Supreme Court agreed that petitioner procedurally defaulted the claim under Rule 61(i)(3). Although petitioner argued that the constitutional violation should overcome the procedural bar, the Delaware Supreme Court concluded that the prosecutor's statement did not infringe upon petitioner's constitutional right not to testify because "the statement more reasonably refer[red] to the quantity of evidence against [petitioner] presented by the State." *Hopkins*, 2007 WL 3385912, at *2. Therefore, the Delaware Supreme Court affirmed the Superior Court's decision.

By applying the procedural bar of Rule 61(i)(3), the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed*, 489 U.S. 255, 263-4 (1984) that its decision rested on state law grounds. This court has consistently held that Rule 61 is an independent and adequate state procedural rule precluding federal habeas review. *See McCleaf v. Carroll*, 416 F. Supp. 2d 283, 296 (D. Del. 2006); *Mayfield v. Carroll*, 2005 WL 2654283 (D. Del. Oct. 11, 2005). Thus, the court cannot review the merits of this portion of claim two absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claim is not reviewed.

Petitioner attempts to establish cause for his default by blaming counsel for not raising this claim during his trial or on direct appeal. Petitioner presented this same ineffective assistance of counsel claim to the Delaware Supreme Court on post-conviction appeal, both as an independent claim and as a way to excuse his procedural default of the underlying Fifth Amendment/improper prosecutorial comment claim. The

11

Delaware Supreme Court denied the ineffective assistance of counsel claim as meritless after determining that the prosecutor's remark was not objectionable. Therefore, petitioner's assertion regarding counsel's alleged failure will constitute cause for his default only if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, *Strickland*.

As an initial matter, the court notes that the Delaware Supreme Court correctly identified the *Strickland* standard and analyzed the instant ineffective assistance of counsel claim within its framework. Consequently, the Delaware Supreme Court's denial of this ineffective assistance of counsel claim was not contrary to clearly established Supreme Court precedent.

In addition, the court concludes that the Delaware Supreme Court's analysis did not constitute an unreasonable application of the *Strickland* standard. Although a prosecutor may not make direct or indirect comments that invite the jury to draw an adverse inference from a defendant's decision not to testify, *Griffin v. California*, 380 U.S. 609, 614 (1965), statements regarding the "absence of such facts in the record need not be taken as a comment on [a] defendant's failure to testify." *Bontempo v. Fenton*, 692 F.2d 954, 959 (3d Cir. 1982). Rather, a comment is improperly directed to a defendant's silence when "the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *United States v. Brennan*, 326 F.3d 176, 187 (3d Cir. 2003)(citations and internal quotation marks omitted).

During petitioner's trial, the State elicited testimony from Bacon and Marte about

12

their prior drug convictions and their roles in the crimes for which petitioner was being tried.[2] When defense counsel presented his closing argument, he attempted to demonstrate the holes in the State's evidence. Specifically, he said,

> Now, let's consider what the State has given you during these past five days. They have given you a video-tape. Well, if this case was as easy as that video-tape, we would not have been here for five days.
>
> There is a video-tape and it shows three people in the room, as we discussed at the outset of this case in opening statements. But the video doesn't show what is going on in people's minds, so the State attempts to prove it in various ways. What they did, in large part, was give you the testimony of two witnesses. One was Pedro Marte and the other was Raymond Bacon . . .

*Id.* at A-777. Defense counsel highlighted the fact that both Marte and Bacon were convicted felons, and then stated that the jury was permitted to consider the witnesses' criminal history and their motives for testifying in deciding whether to give full credit to their testimony. *Id.* at A-778. Finally, attempting to demonstrate the weakness of the physical evidence in this case, defense counsel re-iterated the State's failure to obtain fingerprints from the black bag, the money, pot, spoons, and scales, noting that

> [w]e don't have [] [fingerprints demonstrating actual constructive control over those items] here. As much as we would like to show you that, it is a question mark. We couldn't control that. It is what it is and it doesn't exist. But I submit to you that, as jurors, you could look at not only what evidence we have, the testimony o f Marte and Bacon, two convicted felons, but what evidence we could have had that may have clarified many things and corroborated their testimony. . . . It is your duty, as jurors, to not only do the initial counting, but to do the second counting, and when you look at this case and when you see the shortcomings and when you see what evidence could have been presented to you that was not presented to you that could have established this case beyond a reasonable doubt, it is your duty, just as it was Detective Simpson's duty, to say, "Hey, there must have been a mistake here." If you do that and look at the

---

[2]*See* (D.I. 16, App. to Appellant's Brief in *Hopkins v. State*, No. 250,2007, at A-12 to A-20, A-26 to A-30; App. to Appellant's Op. Br. in *Hopkins v. State*, No. 540, 2004, at B-50 to B-56, B-63)

13

> evidence in this case, I submit to you that at the conclusion of your deliberations, you will find that the State has not carried their burden of proof beyond a reasonable doubt, and for that reason, it will be your duty to return verdicts of not guilty as to all charges for [petitioner].

Id. At A-778, A-803. A-804. In rebuttal, the prosecutor stated,

> Ladies and gentlemen, the evidence in this case does rest on Mr. Marte and Mr. Bacon, but they are bolstered by the corroboration that you find in that video-tape. If the video-tape were the only evidence that we were going to present to you, this trial may have been different. It may have been shorter.
>
> **But I don't know if you would agree or not that you may have more faith in a process when poker is played with the cards up and they are all on the table than when some of them are kept concealed underneath the table and only a few are place up for you to view.**
>
> **You have seen all of the evidence. . . .**

*Id.* at A-815-816 (emphasis added). Nothing in the language used by the prosecutor suggests that it was of such character that the jury would naturally take it to be a comment on petitioner's failure to testify. Rather, the prosecutor was attempting to focus the jury's attention on the holes in defense counsel's theory about the credibility of the witnesses and attempting to underscore the fact that the State had been upfront about Marte and Bacon's criminal history. *See United States v. Balter*, 91 F.3d 427, 441 (3d Cir. 1996). Therefore, the court concludes that the Delaware Supreme Court's finding that the prosecutor's statement was not objectionable constituted a reasonable determination of the facts.

Given the reasonableness of the State Supreme Court's finding that the prosecutor's statement did not implicate petitioner's Fifth Amendment right not to testify, petitioner's complaint about counsel's failure to object to the prosecutor's statement lacks merit. Therefore, counsel's performance cannot constitute cause for petitioner's

14

procedural default of claim two.

In the absence of cause, the court does not need to address the issue of prejudice. Moreover, the miscarriage of justice exception to the procedural default doctrine does not excuse petitioner's default because he has not provided new reliable evidence of his actual innocence. Accordingly, the court will dismiss claim two as procedurally barred.

### C. Claim three: discovery violation

In claim three, petitioner contends that state prosecutors violated Delaware Superior Court Criminal Rule 16 by failing to inform defense counsel that the expert testimony of Detective Wright would include the detective's interpretation of the drug lingo "beat for six." (D.I. 1, at p.9 and Att. A, at pp.8-14). Consequently, petitioner alleges that the "trial court's decision to admit the expert testimony [regarding the interpretation of the phrase "beat for six"] was contrary to, and resulted from an unreasonable application of, clearly established U.S. Supreme Court law." (D.I. 1, Att. A, at p.12)

Petitioner presented this claim to the Delaware Supreme Court on direct appeal, arguing that the application of Rule 16 should have barred the State's expert witness from testifying about the meaning of the phrase "beat for six" because the prosecutors' discovery response did not specify that Detective Wright would offer an opinion regarding the drug lingo. The Delaware Supreme Court reviewed the claim for an abuse of discretion, and determined that the State did not violate Rule 16. Based on this finding, the Delaware Supreme Court then declined to discuss petitioner's "conclusory claim that he was denied his state and federal constitutional rights to a fair

15

trial when the trial court admitted into evidence expert testimony interpreting the drug lingo." *Hopkins*, 893 A.2d at 927 n.6.

Questions relating to the admissibility of evidence are matters of state law and are not, on their own, cognizable in an action for habeas corpus. *See Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)("there is no general constitutional right to discovery in a criminal case."). However, when, as here, a petitioner alleges that a state court's evidentiary error deprived him of fundamental fairness in his criminal trial, the claim does present an issue cognizable on federal habeas review. *See Reynolds v. Ellingsworth*, 843 F.2d 712, 717 n.10 (3d Cir. 1988).

Here, the court cannot discern any deprivation of due process rights arising from the admission of Detective Wright's opinion regarding the drug lingo "beat for six." The record reveals that petitioner received the video-tape containing his use of the phrase "beat for six" prior to trial. In addition, the State identified Detective Wright as an expert in the Special Investigations Unit, and informed petitioner that Detective Wright's expert testimony would include his opinion that petitioner possessed the cocaine with intent to deliver, not with intent to use it personally. As aptly stated by the trial court, the "phrase beat for six supports the commercial nature of the transaction . . . [and] it should come as no surprise that the disclosed expert would be asked questions as to what the phrase meant from a commercial or personal perspective in the context of this case." (D.I 16, A-699 to A-701) Accordingly, the court will deny claim three as meritless.[3]

---

[3]To the extent the court must also determine whether the Delaware Supreme Court's decision to refrain from addressing petitioner's federal due process claim warrants relief under § 2254(d)(1), the court concludes that no such relief is warranted. To reiterate, the Delaware State Courts determined that there was no discovery

## V. CERTIFICATE OF APPEALABILITY

Finally, the court must decide whether to issue a certificate of appealabilty. *See* Third Circuit Local Appellate Rule 22.2. The court may issue a certificate of appealability only when a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing is satisfied when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the denial of a constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

For the reasons stated above, the court concludes that petitioner's habeas application must be denied. Reasonable jurists would not find this conclusion debatable. Consequently, a certificate of appealability will not be issued.

## VI. CONCLUSION

For foregoing reasons, the court will deny petitioner's application for habeas relief filed pursuant to 28 U.S.C. § 2254.

An appropriate order will be entered.

---

violation under Rule 16. According to the Supreme Court in *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977), "there is no general constitutional right to discovery in a criminal case." Consequently, given the absence of a discovery violation under Delaware law, the court concludes that the Delaware Supreme Court's decision to refrain from an inquiry into an alleged federal constitutional violation was neither contrary to, nor an unreasonable application of, *Weatherford*.

17